2006-NMCA-085

140 P.3d 1085

STARKO, INC., d/b/a Medicine Chest # 1 and Jerry Jacobs d/b/a Pill Box Pharmacy # 4, for and on behalf of themselves and all others similarly situated, Plaintiffs–Appellees,

v.

Lou GALLEGOS, individually and as Secretary of the New Mexico Human Services Department; William Johnson, individually and as Secretary of the New Mexico Human Services Department; Alex Valdez, individually and as Secretary of the New Mexico Human Services Department; Robin Dozier–Otten, individually and as Secretary of the New Mexico Human Services Department; Ross Becker, individually and as Director of the Medical Assistance Division of the New Mexico Human Services Department; and Robert Maruca, individually and as Director of the Medical Assistance Division of the New Mexico Human Services Department, Defendants–Appellants,

and

Duke Rodriguez, individually and as Secretary of the New Mexico Human Services Department; Medical Assistance Division of the New Mexico Human Services Department; Charles Milligan, individually and as Director of the Medical Assistance Division of the New Mexico Human Services Department; Ramona Flores–Lopez, individually and as Assistant Director of the Medical Assistance Division of the New Mexico Human Services Department; Lovelace Health Systems, Inc., a New Mexico corporation, d/b/a Lovelace Health Plan; Presbyterian Health Plan, Inc., a New Mexico corporation, d/b/a Presbyterian Salud; and Cimarron Health Plan, Inc., a New Mexico corporation, d/b/a Cimarron Health Maintenance Organization a/k/a Cimarron HMO; and John Does 1–10, Defendants,

and

Lovelace Health Systems, Inc., a New Mexico corporation, d/b/a Lovelace Health Plan; and Cimarron Health Plan, Inc., a New Mexico corporation, d/b/a Cimarron Health Maintenance Organization a/k/a Cimarron HMO, Defendants and Third Party Plaintiffs,

v.

Regent Drugs of New Mexico, Inc., Kenneth L. Corraza; Robert Ghattas; Regent Services of New Mexico, a New Mexico corporation; Paid Prescriptions, LLC, a New Jersey corporation; Merck–Medco Rx Services of Fairfield, a Pennsylvania limited liability company; and Health–Extras Insurance Agency, Inc. a/k/a Health Extras, Inc., a Delaware corporation, Third Party Defendants.

No. 25,042.

Court of Appeals of New Mexico.

April 26, 2006.

Certiorari Denied, No. 29,811, July 25, 2006.

Peifer, Hanson & Mullins P.A., Charles R. Peifer, Jane B. Wishner, Cavin & Ingram, P.A., Sealy H. Cavin, Jr., Stephen D. Ingram, Albuquerque, NM, for Appellees.

Hinkle, Hensley, Shanor & Martin, L.L.P., Ellen S. Casey, Paula M. Buchwald, Santa Fe, NM, for Appellants.

## OPINION

FRY, Judge.

{1} This is the second appeal in a long-running case concerning the sufficiency of Medicaid payments to pharmacists. This Court previously declined to consider an appeal involving the class certification of the plaintiff pharmacies (Plaintiffs). *Starko, Inc. v. Cimarron Health Plan, Inc.*, 2005–NMCA–040, ¶ 2, 137 N.M. 310, 110 P.3d 526. In this appeal, we consider the district court's denial of qualified immunity to several individual defendants (Defendants) who were executives within the Human Services Department (HSD) when HSD implemented a managed care system for Medicaid. For the reasons that follow, we conclude that Plaintiffs have not alleged conduct violating procedural due process protections that are actionable under federal civil rights law. Because the allegations failed to state a constitutional violation, the individual defendants are entitled to qualified immunity. Thus, we reverse the district court's denial of qualified immunity as to the individual defendants who have brought this appeal.

## I. BACKGROUND

{2} New Mexico elects to participate in Medicaid, which is a voluntary federal-state program providing medical services to the needy. *See Atkins v. Rivera*, 477 U.S. 154, 156, 106 S.Ct. 2456, 91 L.Ed.2d 131 (1986). And, like a majority of states, New Mexico has adopted a type of managed care system to provide Medicaid services in order to control costs. *See* Meredith Warner Nissen, *Pharmacists Without Remedies Means Serious Side Effects for Patients: Third Circuit Denies Pennsylvania Pharmacists Standing to Challenge Reimbursement Rates under Medicaid Act*, 48 Vill. L.Rev. 1377, 1381 (2003) (describing the national shift in Medicaid from a fee-for-service model to a managed care model); *see* NMSA 1978, § 27–2–12.6(A) (1994) (stating that HSD "shall provide" a "cost-efficient," statewide managed care system for Medicaid). This managed care system in New Mexico is called "SALUD!."

{3} HSD presumes enrollment in the managed care system for all Medicaid recipients, although HSD still maintains the fee-for-service system for a limited set of recipients, such as Native Americans, who are exempt from managed care. 8.305.4.9 NMAC (2005) (stating that "[a]ll medicaid eligible clients are required to participate in the medicaid managed care program" and then listing certain exceptions). Under the managed care system, services are neither provided nor reimbursed directly by HSD; rather, HSD contracts with private managed care organizations (MCOs) which in turn provide health care to Medicaid recipients. *See* 8.305.1.7(M)(1) NMAC (2005) (defining a Medicaid MCO as "[a]n organization licensed to manage, coordinate and assume financial risk on a capitated basis for the delivery of specified services to enrolled members from a certain geographic area"). These contracts with the MCOs include coverage for prescription medications sold by pharmacists and pharmacies. The MCOs then execute sub-contracts with individual pharmacies, pharmacy chains, or pharmacy provider groups to provide services to Medicaid recipients.

{4} Plaintiffs are a class of pharmacists and pharmacies who claim that they are not being properly reimbursed for filling Medicaid managed care prescriptions. *Starko, Inc.*, 2005–NMCA–040, ¶ 3, 137 N.M. 310, 110 P.3d 526. After initially bringing claims against HSD and certain of its executives individually, Plaintiffs amended their complaint to add the three MCO defendants as indispensable parties. *Id.* ¶ 4. Plaintiffs have raised claims against HSD, the MCOs, and nine individual defendants, including statutory, contract, tort, equitable, and civil rights claims. The present appeal considers only Plaintiffs' claim under federal civil rights law, 42 U.S.C. § 1983 (1996). Plaintiffs claim a property right in a certain dispensing fee set by state statute and claim that former executives within HSD allowed Plaintiffs to be deprived of that fee. Plaintiffs contend that their property right to this fee is protected by the procedural due process protections

guaranteed by the Fourteenth Amendment to the United States Constitution. Plaintiffs claim that former executives within HSD violated Plaintiffs' procedural due process rights by allowing the MCOs to give them less than the fee required by the state statute and, therefore, that these executives are liable for damages and attorney fees. Central to the Plaintiffs' claim is a state statute, which discusses Medicaid reimbursement to pharmacists and which Plaintiffs contend confers the protected property interest on pharmacists who provide services to Medicaid recipients. We therefore begin with a review of the relevant state law and then describe the rulings of the district court, some of which led to this appeal.

## A. The Relevant Statute and Plaintiffs' Contentions

{5} NMSA 1978, § 27–2–16 (1984) contains this subsection:

> B. If drug product selection is permitted by Section 26–3–3 NMSA 1978, reimbursement by *the medicaid program shall be limited to the wholesale cost* of the lesser expensive therapeutic equivalent drug generally available in New Mexico *plus a reasonable dispensing fee of at least three dollars sixty-five cents ($3.65).*

(Emphasis added.) It is the italicized language that Plaintiffs claim creates a right to reimbursement in (1) wholesale cost, which they claim equates to what is known in the industry as average wholesale price; and (2) a fixed dispensing fee of $3.65 for each prescription filled for a Medicaid recipient. The parties and the district court focused their arguments and decision below on the dispensing fee rather than wholesale price. We will limit our focus accordingly.

{6} Plaintiffs have alleged that under the managed care program the MCOs are not reimbursing the $3.65 dispensing fee. Plaintiffs allege that the MCOs pay a dispensing fee of as little as $2.00, and some MCOs have admitted that their sub-contracts with pharmacists provide for dispensing fees substantially less than $3.65. Plaintiffs allege that HSD does pay the $3.65 dispensing fee to pharmacists for the limited populations that are served under the Medicaid fee-for-service system, but that starting in 1997, HSD "began to violate the minimum reimbursement rates established by law when it permitted its managed care organizations in the [managed care program] to cut reimbursement rates for pharmacy services." Plaintiffs contend this cut in reimbursement constituted a denial of procedural due process.

## B. The District Court's Ruling Giving Rise to This Appeal

{7} As noted, the individual defendants in this case were executives within HSD, each of whom acted either as the Secretary of HSD or as the director of the division controlling Medicaid. This appeal involves a sub-set of the individual defendants, the so-called "new" individual defendants who were added in the fifth year of the litigation. The district court, in both 1998 and 2003, had denied qualified immunity to those individual defendants who had been named in the early stages of the litigation. In denying qualified immunity in 2003, the court concluded that (1) the dispensing fee provision created a property right to reimbursement, (2) this right was "clear and unambiguous," and (3) this provision was not discretionary. The district court recited that "plaintiffs must show that the actions of the individual defendants violated a constitutional right, and that the contours of that right were clearly established." It then focused only on state law, concluding that Section 27–2–16(B) was "clear and unambiguous" and "not discretionary," and that "[t]here is a property right to reimbursement . . . as set out in the statute." Without determining whether this property right was protected by the federal constitution, the court denied qualified immunity. The defendants affected by these orders sought writs of error in this Court, but we declined to grant review.

{8} Then, in 2004, the district court also denied qualified immunity to the new individual defendants, who are the appellants in this appeal. In doing so, the district court concluded that: (1) the legislature created a property right by enacting Section 27–2–16(B); (2) it was important that HSD had paid a $3.65 dispensing fee "until the advent of managed care"; (3) the violation of the

statute "underlies the federal claim of denial of due process"; and (4)

> [t]he right that was clear is the right to reimbursement pursuant to the statute, unless and until the legislature determines otherwise[, and t]he contours of this right are sufficiently clear that a reasonable official would understand that discontinuing the reimbursement practice, without legislative approval, violates the constitutional right to due process.

The new individual defendants petitioned this Court for a writ of error, which we granted to review the denial of qualified immunity. For the reasons that follow, we conclude that the district court improperly elevated a violation of state law into a violation of procedural due process and erroneously concluded that Defendants were not entitled to qualified immunity.

## II. DISCUSSION

{9} We begin with a general review of § 1983 and the doctrine of qualified immunity. We then analyze whether qualified immunity should have been granted.

### A. Section 1983 and Qualified Immunity

 {10} Section 1983 does "not itself establish or create any rights." *Moongate Water Co. v. N.M. Env't Dep't*, 120 N.M. 399, 404, 902 P.2d 554, 559 (Ct.App.1995). It does however "provide[ ] a cause of action for money damages against a state official in his or her individual capacity for the deprivation of federal constitutional or [federal] statutory rights." *Garcia–Montoya v. State Treasurer's Office*, 2001–NMSC–003, ¶ 8, 130 N.M. 25, 16 P.3d 1084. Section 1983 provides a cause of action for violation of federal rights, but not for violations of state law. *See Garcia v. Las Vegas Med. Ctr.*, 112 N.M. 441, 443–44, 816 P.2d 510, 512–13 (Ct.App.1991).

 {11} However, under § 1983, an individual official's liability is limited by the doctrine of qualified immunity, which shields government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* (internal quotation marks

and citation omitted); *see also Doe v. Leach*, 1999–NMCA–117, ¶ 11, 128 N.M. 28, 988 P.2d 1252 (stating that qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law" (internal quotation marks and citations omitted)). The applicability of qualified immunity is a question of law that we review de novo. *Hourigan v. Cassidy*, 2001–NMCA–085, ¶ 12, 131 N.M. 141, 33 P.3d 891; *see also Cockrell v. Bd. of Regents of NMSU*, 1999–NMCA–073, ¶¶ 25, 26, 127 N.M. 478, 983 P.2d 427 (holding that where there are no "core, fact-related disputes" as to what occurred, then qualified immunity may be decided as a matter of law), *cert. granted*, 129 N.M. 250, 4 P.3d 1241, *cert. granted, judgment vacated on other grounds by* 527 U.S. 1032, 119 S.Ct. 2389, 144 L.Ed.2d 791 (1999), *appeal after remand*, 2002–NMSC–009, 132 N.M. 156, 45 P.3d 876.

 {12} Qualified immunity grants not only immunity from damages but also immunity from suit, *Romero v. Sanchez*, 119 N.M. 690, 692, 895 P.2d 212, 214 (1995), and even immunity from pre-trial discovery. *Doe*, 1999–NMCA–117, ¶ 13, 128 N.M. 28, 988 P.2d 1252. This is "[b]ecause exposure to civil rights suits may result in distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service." *Burke v. Town of Walpole*, 405 F.3d 66, 76 (1st Cir. 2005) (internal quotation marks and citation omitted). Qualified immunity should be recognized where, under the particular facts, it was objectively reasonable for the government official to believe that his or her acts did not violate a clearly established right. *Yount v. Millington*, 117 N.M. 95, 102, 869 P.2d 283, 290 (Ct.App.1993). Qualified immunity is "the usual rule," and it is only in exceptional cases that governmental actors will have no immunity from claims against them in an individual capacity. *Cockrell*, 1999–NMCA–073, ¶ 8, 127 N.M. 478, 983 P.2d 427 (internal quotation marks omitted); *see also Gross v. Pirtle*, 245 F.3d 1151, 1155 (10th Cir.2001) (stating that to defeat qualified immunity, a plaintiff must satisfy a "heavy two-part burden").

{13} We analyze the defense of qualified immunity in two steps. In the first step, a court "must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all." *Garcia–Montoya*, 2001–NMSC–003, ¶ 9, 130 N.M. 25, 16 P.3d 1084 (internal quotation marks and citation omitted); *accord Kennedy v. Dexter Consol. Schs.*, 2000–NMSC–025, ¶ 10, 129 N.M. 436, 10 P.3d 115. In this first analysis, we look at undisputed facts and facts adduced by the party opposing immunity for "any evidentiary support for finding a possible violation of law." *Cockrell*, 1999–NMCA–073, ¶ 9, 127 N.M. 478, 983 P.2d 427. It is only if we conclude that a violation of a federal right has been alleged that we proceed to the second step. *Garcia–Montoya*, 2001–NMSC–003, ¶ 9, 130 N.M. 25, 16 P.3d 1084; *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). If we reach the second step, then we examine "whether the right was clearly established at the time of the alleged conduct." *Kennedy*, 2000–NMSC–025, ¶ 10, 129 N.M. 436, 10 P.3d 115. For a constitutional right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official understands that what he is doing violates that right." *Id.* (internal quotation marks and citation omitted).

{14} The United States Supreme Court recently reaffirmed this federal-constitutional-question-first approach. *Saucier*, 533 U.S. at 201, 121 S.Ct. 2151 (stating that the question of whether the facts alleged violate a constitutional right "must be the initial inquiry"). While some federal courts have found occasion to avoid answering the federal constitutional question, they have done so in limited and atypical circumstances that do not apply to this case. *See Ehrlich v. Town of Glastonbury*, 348 F.3d 48, 57 (2d Cir.2003) (noting that there may be limited circumstances that make it "inappropriate" to decide the constitutional question first); *see generally* Karen Blum, *Qualified Immunity: The Constitutional Analysis and its Application*, 20 Touro L.Rev. 643, 651–52 (2004) (tracing the development of qualified immunity analysis). Thus, even though we think the present case could be resolved easily by skipping to the second step of the analysis, it appears that the United States Supreme Court precedent requires us to first determine the question of whether the alleged facts, taken in the light most favorable to the party asserting the violation, show a violation of a federal right. *Saucier*, 533 U.S. at 201, 121 S.Ct. 2151; *Garcia–Montoya*, 2001–NMSC–003, ¶ 9, 130 N.M. 25, 16 P.3d 1084; *see also Sutton v. Rasheed*, 323 F.3d 236, 250 n. 27 (3rd Cir.2003) (collecting cases and describing the constitutional-question-first approach as "mandatory").

**B. Defendants Are Entitled to Qualified Immunity Because Plaintiffs Have Not Alleged Deprivation of a Constitutional Right**

{15} We are presented, then, with one narrow question: Whether HSD executives violated procedural due process protections when they contracted with the MCOs in a way that resulted in pharmacists being reimbursed at a rate less than that specified in a state statute. To answer this question, we must determine whether Section 27–2–16(B) creates a property interest triggering procedural due process protections, and if so, whether the state acted to "deprive" Plaintiffs of their property without providing procedural safeguards. Because Plaintiffs are explicitly relying on a violation of procedural due process for a deprivation of a property right we begin with a review of that constitutional guarantee.

{16} We note that Plaintiffs' claims in this case are very different from those in numerous other Medicaid provider lawsuits under § 1983. In those cases, the plaintiffs and providers relied on a violation of federal Medicaid law. *See, e.g., Long Term Care Pharmacy Alliance v. Ferguson*, 362 F.3d 50, 52–53 (1st Cir.2004). Plaintiffs here are alleging only a violation of procedural due process guarantees contained in the Fourteenth Amendment. They contend that Section 27–2–16(B) grants a property right to Medicaid providers in a particular rate of reimbursement and that by implementing managed care in such a way that results in payment of less than that rate, HSD and the individual defendants have violated procedural due process. Thus, we will only examine procedural

due process and disregard many of the Medicaid provider cases brought under § 1983.

{17} The Fourteenth Amendment guarantees that states shall not "deprive any person of life, liberty or property without due process of law." U.S. Const. amend. XIV, § 1. Once a property interest has been "created . . . by . . . an independent source such as state law," then any deprivation of that interest by the state must "be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538, 542, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (internal quotation marks and citation omitted). The question then becomes "what process is due." *Id.* at 541, 105 S.Ct. 1487 (internal quotation marks and citation omitted). "[T]he State may not finally destroy a property interest without first giving the putative owner an opportunity to present his claim of entitlement." *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 434, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982).

{18} The first step in a procedural due process claim is to identify the state-created substantive right at stake and determine whether this right triggers procedural due process protections. *Garcia,* 112 N.M. at 444–45, 816 P.2d at 513–14. The second step is to determine how much process is due to avoid an erroneous deprivation, given the varying interests of the parties and the particular procedures used under the now familiar balancing test of *Mathews v. Eldridge,* 424 U.S. 319, 334–45, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Generally, due process requires notice and some kind of hearing prior to the state acting to deprive a person of a protected interest. *See Yount,* 117 N.M. at 101, 869 P.2d at 289 (stating that notice and an opportunity to be heard must be provided prior to the deprivation of a protected interest unless an "extraordinary" situation is involved). In some cases, state law remedies that are available after the deprivation has occurred will suffice to meet due process guarantees. *Daddow v. Carlsbad Mun. Sch. Dist.,* 120 N.M. 97, 114–15, 898 P.2d 1235, 1252–53 (1995) (Minzner, J., concurring in part and dissenting in part); *Scott v. Bd. of Comm'rs,* 109 N.M. 310, 312, 785 P.2d 221, 223 (1989).

{19} Addressing the first step, we assume without deciding that Section 27–2–16(B) confers upon pharmacists a protected property interest in a dispensing fee of $3.65, particularly where they have already filled prescriptions and are awaiting reimbursement. *See Jordan Hosp., Inc. v. Shalala,* 276 F.3d 72, 78 (1st Cir.2002) (assuming without deciding that a hospital had a property interest in receiving Medicaid reimbursement payments); *see also Tekkno Labs., Inc. v. Perales,* 933 F.2d 1093, 1099–1100 (2d Cir.1991) (Oakes, C.J.concurring) (suggesting that Medicaid provider has a property interest in reimbursement for services already performed). However, not all deprivations of property interests, even if they are in violation of state law, are actionable under § 1983. *Daddow,* 120 N.M. at 115, 898 P.2d at 1253 (Minzner, J. concurring in part and dissenting in part) (stating that even an illegal deprivation of a property interest is not entitled to relief under § 1983 "absent a showing that state remedies or procedures are inadequate"); *Scott,* 109 N.M. at 312, 785 P.2d at 223 (stating that breach of contract by state actors does not amount to a deprivation of property without procedural due process if adequate state law remedies exist to redress the breach). Plaintiffs must show that some process was due them and that state remedies provided inadequate procedural safeguards.

{20} At first blush, Plaintiffs' argument that they were provided no process before a deprivation has some force, because there is no showing that each pharmacy received any individualized hearing before it was reimbursed at a rate below the state law minimum. Thus, Plaintiffs seem to have a legitimate complaint that their property interest was impacted without any procedural safeguards and should be allowed to proceed under § 1983. The absence of any process whatsoever, prior to the deprivation of a property right, would weigh heavily against the state and may allow the conclusion that due process has been violated, even without a *Mathews* balancing analysis. *See Lawrence v. Reed,* 406 F.3d 1224, 1233 (10th Cir.2005)

(finding a procedural due process violation without evaluating *Mathews'* factors when no hearing at all was provided and stating that "[t]ime and again, the Supreme Court has made clear that some form of hearing is required before an individual is finally deprived of a property interest" (internal quotation marks and citation omitted)). However, we conclude that Defendants' actions, in directing or enabling the contracts at issue, do not constitute a violation of procedural due process for two reasons. First, there was no deprivation "by the state" because Plaintiffs here voluntarily entered into the contracts with the MCOs, and second, Plaintiffs are not actually seeking any procedural safeguards to prevent an erroneous deprivation.

{21} Sometimes "to put the question is to answer it." *Bi–Metallic Inv. Co. v. State Bd. of Equalization,* 239 U.S. 441, 445, 36 S.Ct. 141, 60 L.Ed. 372 (1915). Here, the central question of what process should have been provided answers itself and reveals how hollow Plaintiffs' procedural due process claim is. First, the action resulting in the lower payments was not action by the state; rather, it was the agreement by Plaintiffs to provide services to Medicaid recipients via contracts with either the MCOs or the pharmacy provider groups. We fail to see how Plaintiffs did not have notice of the contracts they were about to execute. Nor can we see why the state should hold a hearing on the advisability of two private parties engaging in a commercial contract. We also do not understand what facts would be in dispute before a neutral fact finder in such a hearing that could prevent a "mistaken or unfair" deprivation. *See Fuentes v. Shevin,* 407 U.S. 67, 97, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) (stating that the reason for a predeprivation hearing is to prevent "unfair and mistaken" deprivations of property), *limited on other grounds by Mitchell v. W.T. Grant Co.,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974). We doubt that Plaintiffs have even alleged a "deprivation" particularly in comparison to more traditional cases in which the state acts directly to take property or remove an entitlement. *See Goldberg v. Kelly,* 397 U.S. 254, 261–64, 267–68, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (holding that a person

receiving welfare benefits has a property interest in receiving those benefits that is safeguarded by procedural due process so that a state may not terminate those benefits to a particular person without providing some individualized process).

{22} Second, not only is there a lack of a deprivation by the state here, but Plaintiffs fail to point out any procedural guarantees that should have been provided. Instead, Plaintiffs seek only to have HSD and the MCOs comply with the minimum dispensing fee. Plaintiffs have simply, but creatively, reframed their core complaint—that the individual defendants have permitted HSD and the MCOs to violate state law—so that it appears to be a procedural due process claim.

{23} Furthermore, we can see no benefit in forcing HSD to hold hearings on the contracts at issue. There is apparently no need for a fact finder to hear and determine whether Plaintiffs are indeed pharmacists who have filled prescriptions under the Medicaid managed care system because the parties do not dispute these facts. Plaintiffs do not seek any type of individualized determination as to their entitlement to the $3.65 dispensing fee. Rather, their complaint is with the general policy decision of HSD to allow contracts that allegedly violate state law. Where individualized hearings would be of no value and the core complaint is that a policy contravenes state law, we fail to see how any of the procedural due process elements, or the balancing test of *Mathews,* would apply. There are numerous cases holding that the failure to follow a state statute is not a per se violation of one's rights to procedural due process allowing recovery under § 1983. *Cf. Bagley v. Rogerson,* 5 F.3d 325, 328 (8th Cir.1993) (stating that the federal Constitution does not "guarantee[ ] me all rights created or conferred upon me by state law"); *Doe,* 1999–NMCA-117, ¶ 21, 128 N.M. 28, 988 P.2d 1252; *Moongate Water Co.,* 120 N.M. at 404, 902 P.2d at 559; *Garcia,* 112 N.M. at 443, 816 P.2d at 512. It would fundamentally change § 1983 jurisprudence to hold that a violation of any state statute is a per se violation of the United States Constitution, even where that

state statute grants a protected property interest. *See Bagley,* 5 F.3d at 328.

{24} We conclude that Plaintiffs are pursuing a substantive rather than a procedural due process claim, and we recognize that the difference between the two types of claims can be difficult to discern. For example, in *Gonzales v. City of Castle Rock,* 366 F.3d 1093, 1117 (10th Cir.2004) (*en banc* ), *rev'd on other grounds,* 545 U.S. 748, 125 S.Ct. 2796, 162 L.Ed.2d 658 (2005), a majority of the Tenth Circuit determined that a plaintiff was due some process before police officers ignored a state law and thereby "deprived" her of her property interest in a restraining order, and that such a claim was procedural in nature. Four judges dissented and concluded that the claim was "quintessentially [a] substantive [due process] claim" because "it [went] to the lack of justification" for the officials' actions and "not to the process by which they reached their decision." *Gonzales,* 366 F.3d at 1127 (McConnell, J. joined by Tacha, C.J., and Paul Kelly, Jr. and O'Brien, J.J., concurring in part and dissenting in part). The dissent warned against allowing claims that are essentially substantive to "masquerade" as procedural due process because "it will always be possible for plaintiffs to recharacterize their substantive due process claims against arbitrary actions by executive officers as 'procedural due process' claims, thus avoiding the Supreme Court's exacting 'shocks the conscience' test and getting, instead, the balancing test of *Mathews.*" *Gonzales,* 366 F.3d at 1129–30.

{25} We conclude that in the present case, similar to the circumstances in *Gonzales,* Plaintiffs are attempting to proceed under § 1983 by an innovative use of the "protected interest" notion from procedural due process in order to avoid the stringent standard of substantive due process. We think Plaintiffs' claim, at base, is not directed at the fairness of any procedures that were used or should have been used before the state "deprived" them of a property interest. We need not answer whether Plaintiffs could state a substantive due process claim. We simply note that the test for a substantive due process violation is difficult to meet. It requires facts that shock the conscience or

which amount to one of those "truly horrendous situations" of governmental abuses. *Moongate Water Co.,* 120 N.M. at 404–05, 902 P.2d at 559–60 (differentiating between the tests for violations of substantive and procedural due process guarantees).

{26} Even if we were to evaluate this claim as a procedural due process claim under *Mathews,* Plaintiffs concede that they seek no actual procedural or administrative safeguards, and they do not even point to a forum that should have heard their complaint. Plaintiffs do not claim a right to notice, hearing, or an impartial fact finder, either before or after their deprivation. Plaintiffs want HSD or the MCOs to ensure that pharmacists are paid as set out in the statute; this is a claim seeking to enforce the substance of state law, not seeking any procedure surrounding its withdrawal. We are not persuaded that Plaintiffs allege procedural unfairness of any kind; rather they seek to elevate a statutory violation alone into a constitutional one. This we decline to do.

{27} We find further support from *Garcia,* a case in which this Court examined the subtle interrelationship between state law (creating a protected interest) and the separate matter of federal constitutional law mandating the procedures required for the state to deprive a person of that interest. 112 N.M. at 443, 816 P.2d at 512. We held that "even if defendants' conduct clearly violated New Mexico statutes, they would still be entitled to immunity from liability under § 1983 if their actions did not clearly violate federal due process." *Id.* This describes the present case, where Defendants may well have violated state law, but procedural due process was not offended. "[I]dentifying the contours of the substantive right remains a task distinct from deciding what procedural protections are necessary to protect that right." *Id.* at 444, 816 P.2d at 513 (internal quotation marks and citation omitted). Here, Plaintiffs seek no procedural protections and are not advancing a genuine procedural due process claim; rather they seek only the substance of what state law provides. Thus, we conclude that, while the district court was correct to rule that

Section 27–2–16(B) is clear and unambiguous as to mandating a dispensing fee of at least $3.65, that clarity does not equate to a violation of procedural due process. While officials should strive to obey state law, not every failure to do so is actionable under § 1983 where, as here, there is no violation of a constitutional right. *Davis v. Scherer,* 468 U.S. 183, 194–95, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984).

{28} Finally, we briefly respond to Plaintiffs' argument that the following language from a footnote in *Davis* compels the conclusion that the violation of Section 27–2–16(B) constitutes an automatic violation of due process: "Neither federal nor state officials lose their immunity by violating the clear command of a statute or regulation—of federal or of state law—*unless that statute or regulation provides the basis for the cause of action* sued upon." 468 U.S. at 194 n. 12, 104 S.Ct. 3012 (emphasis added). Plaintiffs claim that because Section 27–2–16(B) provides the predicate property interest, it serves as the "basis" for the cause of action sued upon and therefore, by violating that state law, Defendants lose any immunity. We disagree for two reasons. First, the "basis" for the § 1983 action here is an alleged violation of procedural due process. Second, an expansive reading of this footnote, along the lines that Plaintiffs propose, has been rejected by the United States Supreme Court. *See Elder v. Holloway,* 510 U.S. 510, 515, 114 S.Ct. 1019, 127 L.Ed.2d 344 (1994) (describing *Davis* as answering the "discrete question: Is qualified immunity defeated where a defendant violates *any* clearly established duty, including one under state law, or must the clearly established right be the federal right on which the claim for relief is based? The Court held the latter."); *see also Harbert Int'l, Inc. v. James,* 157 F.3d 1271, 1286 (11th Cir.1998) (rejecting the view that, under *Davis,* violation of a state law creating a protected interest becomes a constitutional violation). We recognize that there are still differing views of how to apply *Davis. Compare Spruytte v. Walters,* 753 F.2d 498, 511 (6th Cir.1985) (denying, in a pre-*Elder* case, qualified immunity to officials who violated "the very rule that creates a protected interest and defines the criteria that must be fulfilled before the interest may be defeated"), *abrogated on other grounds by Virgili v. Gilbert,* 272 F.3d 391 (6th Cir.2001), *and Carlo v. City of Chino,* 105 F.3d 493, 496–97, 501–02 (9th Cir.1997) (holding that a state law providing an arrestee had to be permitted to make three telephone calls created a liberty interest and a violation of that clear state law constituted a violation of procedural due process), *with Gagne v. City of Galveston,* 805 F.2d 558, 560 (5th Cir.1986) (stating that "allegations about the breach of a statute or regulation are simply irrelevant to the question of an official's eligibility for qualified immunity in a suit over the deprivation of a constitutional right"). However, we conclude that Plaintiffs' reading of *Davis* would run contrary to both United States Supreme Court precedent, in *Elder,* and this Court's decision in *Garcia.* In *Garcia,* 112 N.M. at 443–46, 816 P.2d at 512–15, this Court discussed *Davis* and implicitly rejected the notion that a violation of a state law (conferring a protected interest and serving as the predicate for a procedural due process claim) could constitute a per se violation of procedural due process. If a violation of a state law conferring a protected interest were a per se violation of the constitution, there would have been no need in *Garcia* to evaluate, as we did, the minimum procedures required by the constitution. *Id.*

{29} We are deciding only the discrete question of whether Plaintiffs may proceed against Defendants under § 1983, and not whether Plaintiffs can proceed against HSD under other state law remedies. Plaintiffs note the tension between the desire to contain costs while "at the same time ensuring reimbursement is sufficient to maintain an adequate number of providers," and we do not doubt that this tension exists. However, Plaintiff pharmacists do not have a § 1983 action against the individual defendants based upon a constitutional violation.

### III. CONCLUSION

{30} For the foregoing reasons, we conclude that the district court erred in denying Defendants' motion for dismissal on grounds of qualified immunity. We remand for entry

of summary judgment in favor of Defendants.

{31} **IT IS SO ORDERED.**

WE CONCUR: LYNN PICKARD and JONATHAN B. SUTIN, Judges.