OPINION MAES, Justice {1} In these consolidated appeals, we consider whether pharmacists who dispense prescription drugs to Medicaid recipients must be paid under the formula set forth in NMSA 1978, Section 27-2-16(B) (1984). Section 27-2-16(B) provides that the New Mexico Human Services Department (HSD) pay participating pharmacists the wholesale cost of the generic brand plus a dispensing fee of at least three dollars sixty-five cents ($3.65). Section 27-2-16(B) was enacted when New Mexico only operated under a fee-for-services model. The Legislature created a new, alternative managed care system in 1994 in an effort to rein in the burgeoning costs of medical public assistance. Under the managed care system pharmacists contract with managed care organizations (MCOs), not the State, to provide services, and are compensated directly by the MCOs. {2} The district court and our Court of Appeals held that Section 27-2-16(B) applies in both the fee-for-services context and in managed care settings. We reverse, and hold that Section 27-2-16(B) applies only in the fee-for-services context, which requires HSD to directly reimburse providers. I. BACKGROUND {3} Starko, Inc. and Jerry Jacobs (collectively, Plaintiffs) are representatives of a certified class of pharmacists. Plaintiffs argue in these consolidated appeals that New Mexico law requires that pharmacists be reimbursed for dispensing prescription drugs as part of the Medicaid program at the same rate, whether done under a fee-for-services model or a managed care model. {4} Presbyterian Health Plan and Cimarron Health Maintenance Corporation are MCOs that administer a portion of the State of New Mexico’s Medicaid program under the supervision of HSD. All three are defendants in these consolidated appeals. Defendants argue that Section 27-2-16(B) (establishing a reimbursement rate for pharmacists) applies only to the fee-for-services Medicaid model, and that the statute necessarily does not apply to MCOs. {5} Section 27-2-16(B) provides that “[i]f drug product selection is permitted by [NM S A 1978, Section 26-3-3 (2005)], reimbursement by the [M]edicaid program shall be limited to the wholesale cost of the lesser expensive therapeutic equivalent drug generally available in New Mexico plus a reasonable dispensing fee of at least three dollars sixty-five cents ($3.65).’’Essentially, Defendants contend that MCOs are not required to pay a dispensing fee of $3.65, but are free to contract with providers at any other rate that complies with the federal Medicaid regulations. {6} Congress established the Medicaid program as part of the Social Security Act in 1965 “to provide medical assistance to persons whose income and resources are insufficient to meet the costs of necessary care and services.” Atkins v. Rivera, 477 U.S. 154, 156, 106 S.Ct. 2456, 91 L.Ed2d 131 (1986). If a state elects to participate in the Medicaid program, it receives federal funds as long as it “complies] with requirements imposed by the Act and by the Secretary of Health and Human Services” in administering the program. Id. at 157. Some Medicaid benefits are mandatory under the Medicaid program, and others, such as prescribed drugs, are provided at the discretion of the participating state. See 42 U.S.C. 1396d (2012) (defining “medical assistance” which includes both mandatory and optional Medicaid benefits). {7} New Mexico is a participating state and has opted to provide a prescribed drug benefit. See NMSA 1978, § 27-2-12 (2006) (providing for medical assistance programs “[consistent with the federal act and subject to the appropriation and availability of federal and state funds”). Initially, New Mexico’s Medicaid program operated as a fee-for-services model, under which HSD directly provided Medicaid services to eligible recipients. Starko, Inc. v. Presbyterian Health Plan, Inc., 2012-NMCA-053, ¶ 4, 276 P.3d 252. Under the fee-for-services model, HSD directly paid medical service providers, including pharmacists, from public funds. See NMSA 1978, § 27-2-12.13(D)(5) (2003) (“‘[F]ee-for-service’ means a traditional method of paying for health care services under which providers are paid for each service rendered.”). Section 27-2-16(B) was enacted when Medicaid operated on a fee-for-services model. {8} Unfortunately, the fee-for-services model drained the public coffers at what appeared to be an ever increasing rate. “During the late 1980s and early 1990s, Medicaid expenditures soared, rising an average rate of 16.4% per year.” William Alvarado Rivera, A Future for Medicaid Managed Care: The Lessons of California’s San Mateo County, 1 Stan. L. & Pol'y Rev. 105, 111 (1996). As a result New Mexico, like many states, sought to find a way to continue to provide necessary medical services to its citizens while maintaining its fiscal stability. {9} According to testimony by Ramona Flores-Lopez, the Assistant Director of the Medical Assistance Division at HSD, by 1992 the Medicaid program in New Mexico was in “dire financial straits .. . [and] running out of money. ... We were asked to look at all optional services [pharmaceutical benefits were one of those optional services not required by the federal Medicaid program], and [consider our options,] from eliminating optional benefits to reducing benefits to reducing eligibility.” In an attempt to control the costs, following hearings and discussions, the New Mexico Legislature authorized the transition to a managed care system for the Medicaid program and required the new system to “ensure . . . access to medically necessary services ... [to] maintain] the rural primary care delivery infrastructure . . . [and] that the department’s approach is consistent with national and state health care reform principles....” 1994N.M. Laws, eh. 62, § 22 (codified at § 27-2-12.6(B) (1994)). {10} Managed care is neither inconsistent with nor prohibited under the Social Security Act or the federal law governing the Medicaid program. See42 U.S.C. § 1396u-2(a)(l)(A)(I) (2012) (“[S]tate[s] may require an individual who is eligible for medical assistance under the State plan ... to enroll with a managed care entity as a condition of receiving such assistance.”). Under a managed care model, the State contracts with a private organization, an MCO, to deliver health care services to program participants for a fixed fee per person. The MCO develops a network to deliver the required services by negotiating contracts with various medical service providers, such as pharmacists. These provider agreements establish the rates at which the MCO will reimburse providers for their services. If the services provided by the MCO cost more than the fixed fee provided by the State, the MCO bears the loss. Regardless ofwhether there is a loss or a profit, the MCO is responsible for providing all the required healthcare services. Currently HSD presumes all Medicaid eligible recipients will be enrolled in the managed care system. See 8.308.6.9 NMAC (“An eligible recipient is required to participate in a HSD managed care program unless specifically excluded as listed below.”). {11} In 1997, “HSD implemented SALUD!, a managed care program,” under which HSD contracts with private MCOs that provide health care services to Medicaid recipients. Starko, 2012-NMCA-053, ¶ 6. Under SALUD!, HSD negotiated pharmaceutical costs with the MCOs, which in turn negotiated contracts with pharmacists. Id. ¶¶ 6-7. The MCO-pharmacist contracts provided that pharmacists would be reimbursed by the MCOs, not HSD. Id. {12} Plaintiffs argue that because Section 27-2-16(B) (providing a reimbursement rate for dispensing prescribed drugs) was not repealed when New Mexico adopted the managed care system, the statute applies to MCOs. They assert that the statute is comprehensive and it does not matter that the statute was enacted to regulate the fee-for-services model. Therefore, Plaintiffs argue that any contract between a pharmacist and an MCO which specifies a lower reimbursement rate would be illegal, and MCOs are required to pay pharmacists the higher rate established by Section 27-2-16(B). {13} There has been much procedural and legal wrangling over the years in this case. See Starko, 2012-NMCA-053 ¶¶ 7-16 (providing a discussion of some of the procedural history). Ultimately, and most importantly for this opinion, the Court of Appeals held that Section 27-2-16(B) applies to managed care and confers upon participating Medicaid pharmacists an implied cause, of action to enforce the statute directly against Defendant MCOs. See Starko, 2012-NMCA-053, ¶¶ 2, 28-42 (discussing the application of Section 27-2-16(B) to MCOs and any pharmacist’s cause of action). Defendant MCOs separately appealed to this Court. We consolidated the cases and granted certiorari on a number of issues, including whether Section 27-2-16(B) applied to Defendant MCOs. Plaintiffs conditionally cross-appealed. {14} Because our determination that Section 27-2-16(B) only applies in the fee-for-services context is dispositive, we do not address the remaining issues in this opinion. Additional facts will be discussed as necessary. II. STANDARD OF REVIEW {15} This case requires this Court to construe whether Section 27-2-16(B) applies to New Mexico’s managed care system. We review matters of statutory construction de novo. Freedom C. v. Brian D., 2012-NMSC-017, ¶ 13, 280 P.3d 909. III. DISCUSSION Section 27-2-16(B) was not intended to apply to managed care. {16} The Legislature enacted Section 27-2-16(B) before the advent of the Medicaid program’s managed care system, and therefore, Defendants argue that the Legislature only intended that statute to apply to the fee-for-services system. In doing so, Defendants rely on Montoya v. City of Albuquerque, 1970-NMSC-132, ¶ 15, 82 N.M. 90, 476 P.2d 60, where this Court stated that “[a] statute must be interpreted as the Legislature understood it at the time it was enacted.” The argument is that since managed care did not exist at the time the statute was enacted, the Legislature could not have conceived that the statute would apply to managed care, and therefore, Section 27-2-16(B) could not possibly apply to MCOs. {17} Plaintiffs counter that Section 27-2-16(B) applies to managed care, because Montoya was never intended to circumscribe a statute that was meant to be comprehensive, or generally applicable, and that to hold otherwise would greatly broaden the holding of Montoya. Further, Plaintiffs contend, Defendants’ argument ignores the rule that a prior statute continues to apply after a new statute is enacted that addresses the same subject matter unless they conflict. Plaintiffs’ argument relies on State v. Trujillo, 2009-NMSC-012, ¶ 39,146 N.M. 14, 206 P.3d 125 (providing that a section of a statute is not a comprehensive legislative scheme and therefore where a newer statute is silent, previously applicable law applies), and T-N-T Taxi Co. v. N.M. Pub. Regulation Comm'n, 2006-NMSC-016, ¶ 7, 139 N.M. 550, 135 P.3d 814 (“Repeals by implication are not favored and are not resorted to unless necessary to give effect to the legislative intent.”). {18} In interpreting a statute, the Court’s “primary goal is to ascertain and give effect to the intent of the Legislature.” State v. Office of the Pub. Defender, 2012-NMSC-029, ¶ 13, 285 P.3d 622. “[W]e examine the plain language of the statute as well as the context in which it was promulgated, including the history of the statute and the object and purpose the Legislature sought to accomplish.” Id. (internal quotation marks and citation omitted). This Court “avoidfs] adoption of a construction that would render the statute’s application absurd or unreasonable or lead to injustice or contradiction.” Id. (internal quotation marks and citation omitted). {19} Section 27-2-16(B) provides that “[i]f drug product selection is permitted by Section 26-3-3 . . . , reimbursement by the [Mjedicaid program shall be limited to the wholesale cost of the lesser expensive therapeutic equivalent drug generally available in New Mexico plus a reasonable dispensing fee of at least three dollars sixty-five cents ($3.65).” {20} Plaintiffs argue that it is possible to comply with the requirements of both Section 27-2-16(B) and Section 27-2-12.6(B) (providing for the establishment of a managed care system), and therefore no statutory conflict exists. Essentially, the argument posits that it is possible to adopt managed care principles while simultaneously requiring MCOs to reimburse pharmacists at the rates established by Section 27-2-16(B). In making this argument, Plaintiffs assert that cost savings was not the primary purpose behind the State’s implementation of the managed care system. {21} However, simply because the language of two statutes permits them to be read to apply to a single situation, it does not necessarily follow that the Legislature intended the statutes to be read so that they both apply. In this case, the Legislature’s intent is ambiguous at best. Since Section 27-2-16(B) does not explicitly provide that it is applicable to the managed care system, a system that did not exist when the statute was enacted, we then look to the development of the managed care system for indications of the Legislature’s intent. {22} As discussed earlier, at the time the managed care system was established, Medicaid programs were facing increasing costs nationwide that placed an increasing burden on the taxpayers. As a result, managed care was one option that many states, including New Mexico, selected in an attempt to rein in the escalating cost of medical public assistance. Ramona Flores-Lopez, the Assistant Director of the Medical Assistance Division of HSD, testified that she was part of a cost-containment committee that considered the benefits of adopting a managed care program in New Mexico' — the “genesis was the run-away Medicaid costs under the fee-for-service system.” We see from our review of the record that cost savings was a significant motivator in implementing a managed care system. {23} The managed care system is a risk-based system, meaning an MCO bears the risk of loss if the State’s fee does not cover all the costs for the healthcare that the Medicaid program requires MCOs to provide to individuals. In part, states moved to the new model to get away from the fixed rate imposed by the fee-for-services model, in an attempt to scale back the costs to states associated with the Medicaid program. {24} When the Legislature enacted Section 27-2-16(B), the New Mexico Medicaid program operated on a fee-for-services model, like most other states’ Medicaid programs. See Meredith Warner Nissen, Pharmacists Without Remedies Means Serious Side Effects for Patients: Third Circuit Denies Pennsylvania Pharmacists Standing To Challenge Reimbursement Rates Under Medicaid Act, 48 Vill. L. Rev. 1377, 1381 (2003) (describing a national shift away from the fee-for-services model). Under that model, HSD reimbursed pharmacists directly at a fixed rate for the prescribed drugs that they dispensed to individual program participants. See § 27-2-16(B). Section 27-2-16(B) established the rate of reimbursement under the fee-for services system, a fixed rate, but ultimately with a variable, unpredictable annual cost to New Mexico. {25} Under the fee-for-services model, it is difficult to accurately estimate the annual program cost and budget appropriately. The annual cost to the State depends upon a number of variables, including the number of program participants and the number of prescriptions filled, which in turn depends upon how many participants become ill and to what degree. The wholesale cost of the prescribed drugs also is a variable the State is required to consider under a fee-for-services model when budgeting. Thus, the State bears a substantial fiscal risk that depends on the accuracy of its budgetary estimates. {26} The Legislature did not eliminate the fee-for-services system and replace it with a managed care system. Instead, it added a managed care system to New Mexico’s Medicaid program. HSD presumes enrollment in the managed care system for all Medicaid recipients, “although HSD still maintains the fee-for-services system for a limited set of recipients.” Starko, Inc. v. Gallegos, 2006-NMCA-085, ¶ 3, 140 N.M. 136, 140 P.3d 1086 (observing that Native Americans are exempt from managed care); see also 8.308.6.9 NMAC (“An eligible recipient is required to participate in a HSD managed care program unless specifically excluded as listed below [including, among others, certain individuals qualifying for Medicare benefits, refugees, and children and adolescents in out-of-state foster care or adoption placements].”); 8.309.4.9 NMAC (providing an alternative benefit program under Medicaid with limited benefits administered by the Medical Assistance Division of HSD). {27} Under the fee-for services system, HSD continues to reimburse providers directly, but “[u]nder the managed care system, services are neither provided nor reimbursed directly by HSD.” Starko, Inc. v. Gallegos, 2006-NMCA-085, ¶ 3. As part of the managed care model, HSD negotiates a fixed fee and transfers the risk that medical costs will be higher than the fee to the MCOs. The MCOs provide health care to Medicaid recipients, including “coverage for prescription medications sold by pharmacists and pharmacies.” Id. Pharmacists and pharmacies are reimbursed pursuant to the contracts they execute with MCOs under the managed care system. Id. {28} Under a managed care system model, the State may more accurately budget and reduce the risk of unanticipated expenditures because it pays the MCOs a fixed fee per program participant. Once that number of participants is determined there are no further variables to consider. The State simply multiplies the fixed per-person fee by the number of participants and compensates the MCOs. This model shifts the risks of rising drug costs, unexpected increases in illness, and all the other variables from the State to the MCO, which must bear the cost of any loss. Even though the State had shifted its risk, the MCO is still required to follow the federal law regarding prescription drug reimbursements.[1] See, e.g., 42 U.S.C. § 1396r-8 (2012) (providing requirements for prescription drug reimbursements); see also 42 C.F.R. § 447.500 through 447.520 (2012) (providing regulations for payments for prescription drugs). {29} With this background in mind, we turn to Plaintiffs’ argument that Section 27-2-16(B) continues to apply to MCOs. Plaintiffs would have MCOs stand in the place of HSD and thus be required to pay them at the same rate as they were being paid under the old, more costly fee-for-services system. Although it is possible that the Legislature intended Section 27-2-16(B) to apply to both systems, it does not necessarily follow that a statute that was enacted to regulate one system would necessarily be grafted onto a new and alternative system. {30} Ms. Flores-Lopez testified regarding discussions about New Mexico’s federal waiver application to establish managed care as part of the State’s Medicaid program when asked if it included a reimbursement policy for pharmaceuticals.[2] According to Ms. Flores-Lopez, the issue of reimbursements was not a focus of the managed care discussions, because “the understanding [was] that reimbursement would be negotiated between the [MCOs] and the providers. . . . There would be no policy under managed care. It was a risk-based [model that] . . . individual providers would negotiate with the [MCOs].” Thus, there is evidence establishing that there was an understanding that Section 27-2-16(B) would not apply to the new managed care system. The waiver application committee reported its findings and conclusions to the Legislature before the Legislature passed the enacting legislation. {31} According to HSD’s Chief of the Management Information Systems Bureau Robert Stevens, after the legislation was passed, HSD determined that Section 27-2-16(B) did not apply to MCOs “because that provision was enacted before the “[Legislature required [HSD] to provide managed care for [M]edicaid consistent with national and state health care reform principles pursuant to [NMSA 1978,] Section 27-2-12.6 (1994).” Mr. Stevens’ testimony was consistent with the principles of risk-based managed care and Ms. Flores-Lopez’ testimony, that if Section 27-2-16(B) “applied to [MCOs] . . . it would defeat the whole purpose of the legislatively mandated managed care system and the sought after savings due to managed care would not materialize.” {32} We agree with Plaintiffs that this Court is not bound by an agency’s interpretation of a statute. Marbob Energy Corp. v. N.M. Oil Conservation Comm’n, 2009-NMSC-013, ¶ 7, 146 N.M. 24, 206 P.3d 135. However, we also have observed that “[w]hen an agency that is governed by a particular statute construes or applies that statute, the court will begin by according some deference to the agency’s interpretation” and “will confer a heightened degree of deference to legal questions that implicate special agency expertise or the determination of fundamental policies within the scope of the agency’s statutory function.” Morningstar Water Users Ass’n v. N.M. Pub. Util. Comm’n, 1995-NMSC-062, ¶ 11, 120 N.M. 579, 904 P.2d 28 (internal quotation marks and citation omitted). Medicaid program requirements, and healthcare generally, are intricate and complicated areas of law. HSD is the State agency charged with administering Medicaid. Its long-standing interpretation of Section 27-2-16(B) is consistent with general principles of risk-based managed care in health reform and with testimony regarding discussions of at least one of the committees charged with implementing healthcare reform in New Mexico. As such, the Court of Appeals erred when it failed to give any deference to HSD’s interpretation of Section 27-2-16(B). Regardless, we do not base our decision upon HSD’s interpretation, but we do give it some weight in the balance. {33} The Court of Appeals appeared to rely in part on the fact that “[t]he Legislature twice rejected amendments [to Section 27-2-16(B)] that specifically would have either lowered payments or required periodic renegotiation^]” to determine that Section 27-2-16(B) did not apply to the managed care system. Starko, Inc. v. Presbyterian Health Plan, Inc., 2012-NMCA-053, ¶ 30. In doing so, that Court stated “[i]t seems that the evidence is clearly contrary to the MCOs’ argument [that the statute does not apply to the MCOs].” Id. But, as discussed above, where there is a new alternative system created by the Legislature, it does not directly follow that a statute enacted to regulate the previous system, which remains in place, is grafted on to regulate the new system, which is based upon different assumptions. We therefore reject the Court of Appeals’ reasoning regarding this point. {34} Plaintiffs also advance an argument that Section 27-2-16(B) applies to MCOs because the statute contains the phrase “reimbursement by the [Mjedicaid program.” Thus, Plaintiffs argue that since MCOs are part of the Medicaid program, they are subject to the requirements of Section 27-2-16(B). Plaintiffs’ argument relies on the definition of “medicaid” in NMSA 1978, Section 27-2-12.13(D)(7) (2003), “the joint federal-state health coverage program pursuant to Title 19 or Title 21 of the federal act.” Defendants rely on the same definition to argue that by definition, the Medicaid program only refers to the federal and state agencies. {35} Statutory interpretation requires that we “construe the entire statute ... so that all . . . provisions [are] considered in relation to one another.” N.M. Bd. of Veterinary Med. v. Riegger, 2007-NMSC-044, ¶ 11, 142 N.M. 248, 164 P.3d 947 (internal quotation marks and citation omitted). When “expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy.” U.S. Nat. Bank of Or. v. Indep. Ins. Agents of Am., Inc., 508 U.S. 439, 455 (internal quotation marks and citation omitted). {36} Section 27-2-12.13 defines other terms beside “[Mjedicaid.” Fee-for-services is defined as “a traditional method of paying for health care services under which providers are paid for each service rendered.” Section 27-2-12.13(D)(5). Managed care system is defined as “the program for [M]edicaid recipients required by Section 27-2-12.6.” Section 27-2-12.13 (D)(6). This suggests that the Legislature understands the two systems to be separate, although it does not necessarily illuminate the Legislature’s intent regarding pharmaceutical reimbursements. {37} The above definitions in Section 27-2-12.13 alone do not advance our understanding further, as they are the same, or similar to, the definitions that have been part of health care discussions for decades. We observe that Section 27-2-12.13 is titled “Medicaid reform; program changes.” As part of that reform, the Legislature advances new methods of dealing with the costs of prescription drugs. {38} In Section 27-2-12.13(A)(3) and (4), the Legislature provides that [HSD] shall carry out the medicaid program changes as recommended by the medicaid reform committee that was established pursuant to Laws 2002, Chapter 96, as follows . . . identify entities that are eligible to participate in the federal drug pricing program under . . the federal Public Health Service Act[,] . . . make a reasonable effort to assist the eligible entities to enroll in the program and to purchase prescription drugs under the federal drug pricing program... [and] ensure that entities enrolled in the federal drug pricing program are reimbursed for drugs purchased for use by medicaid recipients at acquisition cost and that the purchases are not included in a rebate program. . . . [HSD shall also] work toward the development of a prescription drug purchasing cooperative . . . to obtain the best price for prescription drugs. (Emphasis added.) Section 27-2-12.13(D)(4) defines a “drug purchasing cooperative” as “a collaborative procurement process designed to secure prescription drugs at the most advantageous prices and terms.” {39} Drug purchasing cooperatives that operate to obtain the best prices for prescription drugs necessarily cannot contemplate paying the fixed rate determined by the Legislature. The Legislature gives HSD the responsibility to identify and make a reasonable effort to assist entities to purchase prescription drugs for use by Medicaid recipients, reimbursed at acquisition cost, that are not included in the rebate program. In doing so, it is clear that the Legislature does not intend that a statutorily fixed rate apply. Construing the entire statute and the provisions in relation to one another, the Legislature intends to find new ways to acquire prescription drugs at a rate cheaper than the rebate program contemplated by Section 27-2-16(B) (providing a fixed rate for pharmaceutical reimbursement). {40} Despite the Legislature’s intent to procure prescription drugs at a lower cost than that established by Section 27-2-16(B), that statute remains. Logically, Section 27-2-16(B) applies to certain situations, as part of the rebate program operated for the Medicaid program’s fee-for-services system. But, in the context of the developments in the Medicaid program and healthcare generally, a statute that applies to one system does not necessarily apply to innovations that occur as a means to overcome problems that the old system creates. As in this case, where lowering cost is a substantial concern, creating a new system but importing the old cost model is antithetical to the goals contemplated by the new system. This cannot have been the Legislature’s intent. IV. CONCLUSION {41} The Legislature enacted Section 27-2-16(B) to regulate New Mexico’s reimbursements to pharmacists and pharmacies participating in the Medicaid fee-for-services program directly administered by HSD. In creating the managed care system, New Mexico attempted to implement a strategy to insulate the public coffers from variable expenditures associated with the medical assistance programs and shift the risk of loss. Section 27-2-16(B) was not enacted to regulate pharmaceutical reimbursements in general. {42} Requiring HSD and MCO contracts to comply with Section 27-2-16(B) woitld be antithetical to the cost-saving and cost-efficiency purposes of a managed care system. We hold that Section 27-2-16(B) does not apply to managed care or Defendant MCOs and therefore reverse the Court of Appeals on that point. Plaintiffs have no cause of action against Defendant MCOs. We do not address the other issues presented on appeal. {43} IT IS SO ORDERED. PETRA JIMENEZ MAES, Justice WE CONCUR: RICHARD C. BOSSON, Justice EDWARD L. CHÁVEZ, Justice CHARLES W. DANIELS, Justice BARBARA J. VIGIL, Chief Justice, Dissenting The dispensing rate and the way that cost of prescriptions dmgs is calculated varies from state to state. See Center for Medicaid and CHIP Services, Medicaid Covered Outpatient Prescription Drug Reimbursement Information by State (1st Quarter 2014) available at http://www.medicaid.gov/Medicaid-CHIP-Program-Inf ormation/By-Topics/Benefits/Prescription-Drugs/ Downloads/xxxReimbursement-Chart-current-quartcr-. zip. States may operate a managed care system under a federal waiver provision. See 42 U.S.C. § 1396n(2012) (providing for inapplicability and waiver of some provisions of the federal act). New Mexico applied and obtained a waiver to establish its managed care system. See 42 C.F.R. §438.50 through 438.66 (2012) (providing responsibilities of a state that operates a managed care system).