# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date:  August 25, 2014

Docket No. 33,382

STARKO, INC., d/b/a MEDICINE
CHEST #1, and JERRY JACOBS,
d/b/a PILL BOX PHARMACY #4,
for and on behalf of themselves and
all others similarly situated,

> Plaintiffs-Respondents and
> Cross-Petitioners,

v.

NEW MEXICO HUMAN SERVICES
DEPARTMENT and MEDICAL
ASSISTANCE DIVISION OF THE
NEW MEXICO HUMAN SERVICES
DEPARTMENT,

> Defendants-Petitioners and
> Cross-Respondents,

and

PRESBYTERIAN HEALTH PLAN, INC.,
a New Mexico corporation, d/b/a
PRESBYTERIAN SALUD and CIMARRON
HEALTH PLAN, INC., a New Mexico
corporation, d/b/a CIMARRON HEALTH
MAINTENANCE ORGANIZATION, a/k/a
CIMARRON HMO,

> Defendants,

and

Docket No. 33,383

**STARKO, INC., d/b/a MEDICINE CHEST #1, and JERRY JACOBS, d/b/a PILL BOX PHARMACY #4, for and on behalf of themselves and all others similarly situated,**

      **Plaintiffs-Respondents and Cross-Petitioners,**

**v.**

**PRESBYTERIAN HEALTH PLAN, INC., a New Mexico corporation, d/b/a PRESBYTERIAN SALUD,**

      **Defendant-Petitioner and Cross-Respondent,**

**and**

**CIMARRON HEALTH PLAN, INC., a New Mexico corporation, d/b/a CIMARRON HEALTH MAINTENANCE ORGANIZATION, a/k/a CIMARRON HMO and NEW MEXICO HUMAN SERVICES DEPARTMENT and MEDICAL ASSISTANCE DIVISION OF THE NEW MEXICO HUMAN SERVICES DEPARTMENT,**

      **Defendants,**

**and**

**Docket No. 33,384**

**STARKO, INC., d/b/a MEDICINE CHEST #1, and JERRY JACOBS, d/b/a PILL BOX PHARMACY #4, for and on behalf of themselves and all others similarly situated,**

      **Plaintiffs-Respondents and Cross-Petitioners,**

**v.**

**CIMARRON HEALTH PLAN, INC., a New Mexico corporation, d/b/a CIMARRON HEALTH MAINTENANCE ORGANIZATION, a/k/a CIMARRON HMO,**

      **Defendant-Petitioner and**
      **Cross-Respondent,**

**and**

**PRESBYTERIAN HEALTH PLAN, INC., a New Mexico corporation, d/b/a PRESBYTERIAN SALUD, and NEW MEXICO HUMAN SERVICES DEPARTMENT and MEDICAL ASSISTANCE DIVISION OF THE NEW MEXICO HUMAN SERVICES DEPARTMENT,**

      **Defendants.**

**ORIGINAL PROCEEDINGS ON CERTIORARI**
**Linda M. Vanzi, District Judge**

Gary K. King, Attorney General
Jerome Marshak, Special Assistant Attorney General
Santa Fe, NM

N.M. Human Services Department
Larry Heyeck
Santa Fe, NM

for Petitioners and Cross-Respondents New Mexico Human Services Department and Medical Assistance Division of the New Mexico Human Services Department

John B. Pound, L.L.C.
John Bennett Pound
Santa Fe, NM

Rodey, Dickason, Sloan, Akin & Robb, P.A.
Edward R. Ricco
Melanie Bret Stambaugh
Albuquerque, NM

for Petitioner and Cross-Respondent Presbyterian Health Plan, Inc., a New Mexico Corporation, d/b/a Presbyterian Salud

Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Lisa Mann
Jennifer A. Noya
Emil John Kiehne
Anna Elizabeth Indahl
Albuquerque, NM

for Petitioner Cimarron Health Plan, Inc., a New Mexico Corporation, d/b/a Cimarron Health Maintenance Organization, a/k/a Cimarron HMO

Peifer, Hanson & Mullins, P.A.
Charles R. Peifer
Robert E. Hanson
Lauren Keefe
Elizabeth K. Radosevich
Albuquerque, NM

Cavin & Ingram, P.A.
Stephen Dean Ingram
Sealy Hutchings Cavin, Jr.
Albuquerque, NM

for Respondents and Cross-Petitioners

## OPINION

**MAES, Justice**

{1}     In these consolidated appeals, we consider whether pharmacists who dispense prescription drugs to Medicaid recipients must be paid under the formula set forth in NMSA 1978, Section 27-2-16(B) (1984). Section 27-2-16(B) provides that the New Mexico Human Services Department (HSD) pay participating pharmacists the wholesale cost of the generic brand plus a dispensing fee of at least three dollars sixty-five cents ($3.65). Section 27-2-16(B) was enacted when New Mexico only operated under a fee-for-services model. The Legislature created a new, alternative managed care system in 1994 in an effort to rein in the burgeoning costs of medical public assistance. Under the managed care system pharmacists contract with managed care organizations (MCOs), not the State, to provide services, and are compensated directly by the MCOs.

{2}     The district court and our Court of Appeals held that Section 27-2-16(B) applies in both the fee-for-services context and in managed care settings. We reverse, and hold that

4

Section 27-2-16(B) applies only in the fee-for-services context, which requires HSD to directly reimburse providers.

## I.        BACKGROUND

**{3}**        Starko, Inc. and Jerry Jacobs (collectively, Plaintiffs) are representatives of a certified class of pharmacists. Plaintiffs argue in these consolidated appeals that New Mexico law requires that pharmacists be reimbursed for dispensing prescription drugs as part of the Medicaid program at the same rate, whether done under a fee-for-services model or a managed care model.

**{4}**        Presbyterian Health Plan and Cimarron Health Maintenance Corporation are MCOs that administer a portion of the State of New Mexico's Medicaid program under the supervision of HSD. All three are defendants in these consolidated appeals. Defendants argue that Section 27-2-16(B) (establishing a reimbursement rate for pharmacists) applies only to the fee-for-services Medicaid model, and that the statute necessarily does not apply to MCOs.

**{5}**        Section 27-2-16(B) provides that "[i]f drug product selection is permitted by [NMSA 1978, Section 26-3-3 (2005)], reimbursement by the [M]edicaid program shall be limited to the wholesale cost of the lesser expensive therapeutic equivalent drug generally available in New Mexico plus a reasonable dispensing fee of at least three dollars sixty-five cents ($3.65)." Essentially, Defendants contend that MCOs are not required to pay a dispensing fee of $3.65, but are free to contract with providers at any other rate that complies with the federal Medicaid regulations.

**{6}**        Congress established the Medicaid program as part of the Social Security Act in 1965 "to provide medical assistance to persons whose income and resources are insufficient to meet the costs of necessary care and services." *Atkins v. Rivera*, 477 U.S. 154, 156, 106 S.Ct. 2456, 91 L.Ed2d 131 (1986). If a state elects to participate in the Medicaid program, it receives federal funds as long as it "compl[ies] with requirements imposed by the Act and by the Secretary of Health and Human Services" in administering the program. *Id.* at 157. Some Medicaid benefits are mandatory under the Medicaid program, and others, such as prescribed drugs, are provided at the discretion of the participating state. *See* 42 U.S.C. 1396d (2012) (defining "medical assistance" which includes both mandatory and optional Medicaid benefits).

**{7}**        New Mexico is a participating state and has opted to provide a prescribed drug benefit. *See* NMSA 1978, § 27-2-12 (2006) (providing for medical assistance programs "[c]onsistent with the federal act and subject to the appropriation and availability of federal and state funds"). Initially, New Mexico's Medicaid program operated as a fee-for-services model, under which HSD directly provided Medicaid services to eligible recipients. *Starko, Inc. v. Presbyterian Health Plan, Inc.*, 2012-NMCA-053, ¶ 4, 276 P.3d 252. Under the fee-for-services model, HSD directly paid medical service providers, including pharmacists,

5

from public funds. *See* NMSA 1978, § 27-2-12.13(D)(5) (2003) ("'[F]ee-for-service' means a traditional method of paying for health care services under which providers are paid for each service rendered."). Section 27-2-16(B) was enacted when Medicaid operated on a fee-for-services model.

**{8}** Unfortunately, the fee-for-services model drained the public coffers at what appeared to be an ever increasing rate. "During the late 1980s and early 1990s, Medicaid expenditures soared, rising an average rate of 16.4% per year." William Alvarado Rivera, *A Future for Medicaid Managed Care: The Lessons of California's San Mateo County*, 7 Stan. L. & Pol'y Rev. 105, 111 (1996). As a result New Mexico, like many states, sought to find a way to continue to provide necessary medical services to its citizens while maintaining its fiscal stability.

**{9}** According to testimony by Ramona Flores-Lopez, the Assistant Director of the Medical Assistance Division at HSD, by 1992 the Medicaid program in New Mexico was in "dire financial straits . . . [and] running out of money. . . . We were asked to look at all optional services [pharmaceutical benefits were one of those optional services not required by the federal Medicaid program], and [consider our options,] from eliminating optional benefits to reducing benefits to reducing eligibility." In an attempt to control the costs, following hearings and discussions, the New Mexico Legislature authorized the transition to a managed care system for the Medicaid program and required the new system to "ensure . . . access to medically necessary services . . . [to] maint[ain] the rural primary care delivery infrastructure . . . [and] that the department's approach is consistent with national and state health care reform principles. . . ." 1994 N.M. Laws, ch. 62, § 22 (codified at § 27-2-12.6(B) (1994)).

**{10}** Managed care is neither inconsistent with nor prohibited under the Social Security Act or the federal law governing the Medicaid program. *See* 42 U.S.C. § 1396u-2(a)(1)(A)(I) (2012) ("[S]tate[s] may require an individual who is eligible for medical assistance under the State plan . . . to enroll with a managed care entity as a condition of receiving such assistance."). Under a managed care model, the State contracts with a private organization, an MCO, to deliver health care services to program participants for a fixed fee per person. The MCO develops a network to deliver the required services by negotiating contracts with various medical service providers, such as pharmacists. These provider agreements establish the rates at which the MCO will reimburse providers for their services. If the services provided by the MCO cost more than the fixed fee provided by the State, the MCO bears the loss. Regardless of whether there is a loss or a profit, the MCO is responsible for providing all the required healthcare services. Currently HSD presumes all Medicaid eligible recipients will be enrolled in the managed care system. *See* 8.308.6.9 NMAC ("An eligible recipient is required to participate in a HSD managed care program unless specifically excluded as listed below.").

**{11}** In 1997, "HSD implemented SALUD!, a managed care program," under which HSD contracts with private MCOs that provide health care services to Medicaid recipients. *Starko*,

2012-NMCA-053, ¶ 6. Under SALUD!, HSD negotiated pharmaceutical costs with the MCOs, which in turn negotiated contracts with pharmacists. *Id.* ¶¶ 6-7. The MCO-pharmacist contracts provided that pharmacists would be reimbursed by the MCOs, not HSD. *Id.*

**{12}** Plaintiffs argue that because Section 27-2-16(B) (providing a reimbursement rate for dispensing prescribed drugs) was not repealed when New Mexico adopted the managed care system, the statute applies to MCOs. They assert that the statute is comprehensive and it does not matter that the statute was enacted to regulate the fee-for-services model. Therefore, Plaintiffs argue that any contract between a pharmacist and an MCO which specifies a lower reimbursement rate would be illegal, and MCOs are required to pay pharmacists the higher rate established by Section 27-2-16(B).

**{13}** There has been much procedural and legal wrangling over the years in this case. *See Starko*, 2012-NMCA-053 ¶¶ 7-16 (providing a discussion of some of the procedural history). Ultimately, and most importantly for this opinion, the Court of Appeals held that Section 27-2-16(B) applies to managed care and confers upon participating Medicaid pharmacists an implied cause of action to enforce the statute directly against Defendant MCOs. *See Starko*, 2012-NMCA-053, ¶¶ 2, 28-42 (discussing the application of Section 27-2-16(B) to MCOs and any pharmacist's cause of action). Defendant MCOs separately appealed to this Court. We consolidated the cases and granted certiorari on a number of issues, including whether Section 27-2-16(B) applied to Defendant MCOs. Plaintiffs conditionally cross-appealed.

**{14}** Because our determination that Section 27-2-16(B) only applies in the fee-for-services context is dispositive, we do not address the remaining issues in this opinion. Additional facts will be discussed as necessary.

## II.	STANDARD OF REVIEW

**{15}** This case requires this Court to construe whether Section 27-2-16(B) applies to New Mexico's managed care system. We review matters of statutory construction de novo. *Freedom C. v. Brian D.*, 2012-NMSC-017, ¶ 13, 280 P.3d 909.

## III.	DISCUSSION

**Section 27-2-16(B) was not intended to apply to managed care.**

**{16}** The Legislature enacted Section 27-2-16(B) before the advent of the Medicaid program's managed care system, and therefore, Defendants argue that the Legislature only intended that statute to apply to the fee-for-services system. In doing so, Defendants rely on *Montoya v. City of Albuquerque*, 1970-NMSC-132, ¶ 15, 82 N.M. 90, 476 P.2d 60, where this Court stated that "[a] statute must be interpreted as the Legislature understood it at the time it was enacted." The argument is that since managed care did not exist at the time the statute was enacted, the Legislature could not have conceived that the statute would apply

to managed care, and therefore, Section 27-2-16(B) could not possibly apply to MCOs.

**{17}** Plaintiffs counter that Section 27-2-16(B) applies to managed care, because *Montoya* was never intended to circumscribe a statute that was meant to be comprehensive, or generally applicable, and that to hold otherwise would greatly broaden the holding of *Montoya*. Further, Plaintiffs contend, Defendants' argument ignores the rule that a prior statute continues to apply after a new statute is enacted that addresses the same subject matter *unless* they conflict. Plaintiffs' argument relies on *State v. Trujillo*, 2009-NMSC-012, ¶ 39, 146 N.M. 14, 206 P.3d 125 (providing that a section of a statute is not a comprehensive legislative scheme and therefore where a newer statute is silent, previously applicable law applies), and *T-N-T Taxi Co. v. N.M. Pub. Regulation Comm'n*, 2006-NMSC-016, ¶ 7, 139 N.M. 550, 135 P.3d 814 ("Repeals by implication are not favored and are not resorted to unless necessary to give effect to the legislative intent.").

**{18}** In interpreting a statute, the Court's "primary goal is to ascertain and give effect to the intent of the Legislature." *State v. Office of the Pub. Defender*, 2012-NMSC-029, ¶ 13, 285 P.3d 622. "[W]e examine the plain language of the statute as well as the context in which it was promulgated, including the history of the statute and the object and purpose the Legislature sought to accomplish." *Id.* (internal quotation marks and citation omitted). This Court "avoid[s] adoption of a construction that would render the statute's application absurd or unreasonable or lead to injustice or contradiction." *Id.* (internal quotation marks and citation omitted).

**{19}** Section 27-2-16(B) provides that "[i]f drug product selection is permitted by Section 26-3-3 . . . , reimbursement by the [M]edicaid program shall be limited to the wholesale cost of the lesser expensive therapeutic equivalent drug generally available in New Mexico plus a reasonable dispensing fee of at least three dollars sixty-five cents ($3.65)."

**{20}** Plaintiffs argue that it is possible to comply with the requirements of both Section 27-2-16(B) and Section 27-2-12.6(B) (providing for the establishment of a managed care system), and therefore no statutory conflict exists. Essentially, the argument posits that it is possible to adopt managed care principles while simultaneously requiring MCOs to reimburse pharmacists at the rates established by Section 27-2-16(B). In making this argument, Plaintiffs assert that cost savings was not the primary purpose behind the State's implementation of the managed care system.

**{21}** However, simply because the language of two statutes permits them to be read to apply to a single situation, it does not necessarily follow that the Legislature intended the statutes to be read so that they both apply. In this case, the Legislature's intent is ambiguous at best. Since Section 27-2-16(B) does not explicitly provide that it is applicable to the managed care system, a system that did not exist when the statute was enacted, we then look to the development of the managed care system for indications of the Legislature's intent.

**{22}** As discussed earlier, at the time the managed care system was established, Medicaid

programs were facing increasing costs nationwide that placed an increasing burden on the taxpayers. As a result, managed care was one option that many states, including New Mexico, selected in an attempt to rein in the escalating cost of medical public assistance. Ramona Flores-Lopez, the Assistant Director of the Medical Assistance Division of HSD, testified that she was part of a cost-containment committee that considered the benefits of adopting a managed care program in New Mexico—the "genesis was the run-away Medicaid costs under the fee-for-service system." We see from our review of the record that cost savings was a significant motivator in implementing a managed care system.

**{23}** The managed care system is a risk-based system, meaning an MCO bears the risk of loss if the State's fee does not cover all the costs for the healthcare that the Medicaid program requires MCOs to provide to individuals. In part, states moved to the new model to get away from the fixed rate imposed by the fee-for-services model, in an attempt to scale back the costs to states associated with the Medicaid program.

**{24}** When the Legislature enacted Section 27-2-16(B), the New Mexico Medicaid program operated on a fee-for-services model, like most other states' Medicaid programs. *See* Meredith Warner Nissen, *Pharmacists Without Remedies Means Serious Side Effects for Patients: Third Circuit Denies Pennsylvania Pharmacists Standing To Challenge Reimbursement Rates Under Medicaid Act*, 48 Vill. L. Rev. 1377, 1381 (2003) (describing a national shift away from the fee-for-services model). Under that model, HSD reimbursed pharmacists directly at a fixed rate for the prescribed drugs that they dispensed to individual program participants. *See* § 27-2-16(B). Section 27-2-16(B) established the rate of reimbursement under the fee-for services system, a fixed rate, but ultimately with a variable, unpredictable annual cost to New Mexico.

**{25}** Under the fee-for-services model, it is difficult to accurately estimate the annual program cost and budget appropriately. The annual cost to the State depends upon a number of variables, including the number of program participants and the number of prescriptions filled, which in turn depends upon how many participants become ill and to what degree. The wholesale cost of the prescribed drugs also is a variable the State is required to consider under a fee-for-services model when budgeting. Thus, the State bears a substantial fiscal risk that depends on the accuracy of its budgetary estimates.

**{26}** The Legislature did not eliminate the fee-for-services system and replace it with a managed care system. Instead, it added a managed care system to New Mexico's Medicaid program. HSD presumes enrollment in the managed care system for all Medicaid recipients, "although HSD still maintains the fee-for-services system for a limited set of recipients." *Starko, Inc. v. Gallegos*, 2006-NMCA-085, ¶ 3, 140 N.M. 136, 140 P.3d 1086 (observing that Native Americans are exempt from managed care); *see also* 8.308.6.9 NMAC ("An eligible recipient is required to participate in a HSD managed care program unless specifically excluded as listed below [including, among others, certain individuals qualifying for Medicare benefits, refugees, and children and adolescents in out-of-state foster care or adoption placements]."); 8.309.4.9 NMAC (providing an alternative benefit program under

9

Medicaid with limited benefits administered by the Medical Assistance Division of HSD).

**{27}** Under the fee-for services system, HSD continues to reimburse providers directly, but "[u]nder the managed care system, services are neither provided nor reimbursed directly by HSD." *Starko, Inc. v. Gallegos*, 2006-NMCA-085, ¶ 3. As part of the managed care model, HSD negotiates a fixed fee and transfers the risk that medical costs will be higher than the fee to the MCOs. The MCOs provide health care to Medicaid recipients, including "coverage for prescription medications sold by pharmacists and pharmacies." *Id.* Pharmacists and pharmacies are reimbursed pursuant to the contracts they execute with MCOs under the managed care system. *Id.*

**{28}** Under a managed care system model, the State may more accurately budget and reduce the risk of unanticipated expenditures because it pays the MCOs a fixed fee per program participant. Once that number of participants is determined there are no further variables to consider. The State simply multiplies the fixed per-person fee by the number of participants and compensates the MCOs. This model shifts the risks of rising drug costs, unexpected increases in illness, and all the other variables from the State to the MCO, which must bear the cost of any loss. Even though the State had shifted its risk, the MCO is still required to follow the federal law regarding prescription drug reimbursements.[1] *See, e.g.*, 42 U.S.C. § 1396r-8 (2012) (providing requirements for prescription drug reimbursements); *see also* 42 C.F.R. § 447.500 through 447.520 (2012) (providing regulations for payments for prescription drugs).

**{29}** With this background in mind, we turn to Plaintiffs' argument that Section 27-2-16(B) continues to apply to MCOs. Plaintiffs would have MCOs stand in the place of HSD and thus be required to pay them at the same rate as they were being paid under the old, more costly fee-for-services system. Although it is possible that the Legislature intended Section 27-2-16(B) to apply to both systems, it does not necessarily follow that a statute that was enacted to regulate one system would necessarily be grafted onto a *new and alternative* system.

**{30}** Ms. Flores-Lopez testified regarding discussions about New Mexico's federal waiver application to establish managed care as part of the State's Medicaid program when asked if it included a reimbursement policy for pharmaceuticals.[2] According to Ms. Flores-Lopez,

---

[1]The dispensing rate and the way that cost of prescriptions drugs is calculated varies from state to state. *See* Center for Medicaid and CHIP Services, Medicaid Covered Outpatient Prescription Drug Reimbursement Information by State (1st Quarter 2014) *available at* http://www.medicaid.gov/Medicaid-CHIP-Program-Information/By-Topics/Benefits/Prescription-Drugs/Downloads/xxxReimbursement-Chart-current-quarter-.zip.

[2]States may operate a managed care system under a federal waiver provision. *See* 42 U.S.C. § 1396n (2012) (providing for inapplicability and waiver of some provisions of the

10

the issue of reimbursements was not a focus of the managed care discussions, because "the understanding [was] that reimbursement would be negotiated between the [MCOs] and the providers. . . . There would be no policy under managed care. It was a risk-based [model that] . . . individual providers would negotiate with the [MCOs]." Thus, there is evidence establishing that there was an understanding that Section 27-2-16(B) would not apply to the new managed care system. The waiver application committee reported its findings and conclusions to the Legislature before the Legislature passed the enacting legislation.

**{31}** According to HSD's Chief of the Management Information Systems Bureau Robert Stevens, after the legislation was passed, HSD determined that Section 27-2-16(B) did not apply to MCOs "because that provision was enacted before the "[L]egislature required [HSD] to provide managed care for [M]edicaid consistent with national and state health care reform principles pursuant to [NMSA 1978,] Section 27-2-12.6 (1994)." Mr. Stevens' testimony was consistent with the principles of risk-based managed care and Ms. Flores-Lopez' testimony, that if Section 27-2-16(B) "applied to [MCOs] . . . it would defeat the whole purpose of the legislatively mandated managed care system and the sought after savings due to managed care would not materialize."

**{32}** We agree with Plaintiffs that this Court is not bound by an agency's interpretation of a statute. *Marbob Energy Corp. v. N.M. Oil Conservation Comm'n*, 2009-NMSC-013, ¶ 7, 146 N.M. 24, 206 P.3d 135. However, we also have observed that "[w]hen an agency that is governed by a particular statute construes or applies that statute, the court will begin by according some deference to the agency's interpretation" and "will confer a heightened degree of deference to legal questions that implicate special agency expertise or the determination of fundamental policies within the scope of the agency's statutory function." *Morningstar Water Users Ass'n v. N.M. Pub. Util. Comm'n*, 1995-NMSC-062, ¶ 11, 120 N.M. 579, 904 P.2d 28 (internal quotation marks and citation omitted). Medicaid program requirements, and healthcare generally, are intricate and complicated areas of law. HSD is the State agency charged with administering Medicaid. Its long-standing interpretation of Section 27-2-16(B) is consistent with general principles of risk-based managed care in health reform and with testimony regarding discussions of at least one of the committees charged with implementing healthcare reform in New Mexico. As such, the Court of Appeals erred when it failed to give any deference to HSD's interpretation of Section 27-2-16(B). Regardless, we do not base our decision upon HSD's interpretation, but we do give it some weight in the balance.

**{33}** The Court of Appeals appeared to rely in part on the fact that "[t]he Legislature twice rejected amendments [to Section 27-2-16(B)] that specifically would have either lowered payments or required periodic renegotiation[s]" to determine that Section 27-2-16(B) did not

---

federal act). New Mexico applied and obtained a waiver to establish its managed care system. *See* 42 C.F.R. § 438.50 through 438.66 (2012) (providing responsibilities of a state that operates a managed care system).

apply to the managed care system. *Starko, Inc. v. Presbyterian Health Plan, Inc.*, 2012-NMCA-053, ¶ 30. In doing so, that Court stated "[i]t seems that the evidence is clearly contrary to the MCOs' argument [that the statute does not apply to the MCOs]." *Id.* But, as discussed above, where there is a new alternative system created by the Legislature, it does not directly follow that a statute enacted to regulate the previous system, which remains in place, is grafted on to regulate the new system, which is based upon different assumptions. We therefore reject the Court of Appeals' reasoning regarding this point.

**{34}** Plaintiffs also advance an argument that Section 27-2-16(B) applies to MCOs because the statute contains the phrase "reimbursement by the [M]edicaid program." Thus, Plaintiffs argue that since MCOs are part of the Medicaid program, they are subject to the requirements of Section 27-2-16(B). Plaintiffs' argument relies on the definition of "medicaid" in NMSA 1978, Section 27-2-12.13(D)(7) (2003), "the joint federal-state health coverage program pursuant to Title 19 or Title 21 of the federal act." Defendants rely on the same definition to argue that by definition, the Medicaid program only refers to the federal and state agencies.

**{35}** Statutory interpretation requires that we "construe the entire statute . . . so that all . . . provisions [are] considered in relation to one another." *N.M. Bd. of Veterinary Med. v. Riegger*, 2007-NMSC-044, ¶ 11, 142 N.M. 248, 164 P.3d 947 (internal quotation marks and citation omitted). When "expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." *U.S. Nat. Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 455 (internal quotation marks and citation omitted).

**{36}** Section 27-2-12.13 defines other terms beside "[M]edicaid." Fee-for-services is defined as "a traditional method of paying for health care services under which providers are paid for each service rendered." Section 27-2-12.13(D)(5). Managed care system is defined as "the program for [M]edicaid recipients required by Section 27-2-12.6." Section 27-2-12.13(D)(6). This suggests that the Legislature understands the two systems to be separate, although it does not necessarily illuminate the Legislature's intent regarding pharmaceutical reimbursements.

**{37}** The above definitions in Section 27-2-12.13 alone do not advance our understanding further, as they are the same, or similar to, the definitions that have been part of health care discussions for decades. We observe that Section 27-2-12.13 is titled "Medicaid reform; program changes." As part of that reform, the Legislature advances new methods of dealing with the costs of prescription drugs.

**{38}** In Section 27-2-12.13(A)(3) and (4), the Legislature provides that

> [HSD] shall carry out the medicaid program changes as recommended by the medicaid reform committee that was established pursuant to Laws 2002, Chapter 96, as follows . . . identify entities that are eligible to participate in

the federal drug pricing program under . . the federal Public Health Service Act[,] . . . make a reasonable effort to assist the eligible entities to enroll in the program and to purchase prescription drugs under the federal drug pricing program . . . [and] ensure that entities enrolled in the federal drug pricing program *are reimbursed* for drugs purchased for use by medicaid recipients *at acquisition cost and that the purchases are not included in a rebate program. . . .* [HSD shall also] work toward the development of a *prescription drug purchasing cooperative . . . to obtain the best price for prescription drugs*.

(Emphasis added.) Section 27-2-12.13(D)(4) defines a "drug purchasing cooperative" as "a collaborative procurement process designed to secure prescription drugs at the most advantageous prices and terms."

{39}  Drug purchasing cooperatives that operate to obtain the best prices for prescription drugs necessarily cannot contemplate paying the fixed rate determined by the Legislature. The Legislature gives HSD the responsibility to identify and make a reasonable effort to assist entities to purchase prescription drugs for use by Medicaid recipients, reimbursed at acquisition cost, that are not included in the rebate program. In doing so, it is clear that the Legislature does not intend that a statutorily fixed rate apply. Construing the entire statute and the provisions in relation to one another, the Legislature intends to find new ways to acquire prescription drugs at a rate cheaper than the rebate program contemplated by Section 27-2-16(B) (providing a fixed rate for pharmaceutical reimbursement).

{40}  Despite the Legislature's intent to procure prescription drugs at a lower cost than that established by Section 27-2-16(B), that statute remains. Logically, Section 27-2-16(B) applies to certain situations, as part of the rebate program operated for the Medicaid program's fee-for-services system. But, in the context of the developments in the Medicaid program and healthcare generally, a statute that applies to one system does not necessarily apply to innovations that occur as a means to overcome problems that the old system creates. As in this case, where lowering cost is a substantial concern, creating a new system but importing the old cost model is antithetical to the goals contemplated by the new system. This cannot have been the Legislature's intent.

## IV.  CONCLUSION

{41}  The Legislature enacted Section 27-2-16(B) to regulate New Mexico's reimbursements to pharmacists and pharmacies participating in the Medicaid fee-for-services program directly administered by HSD. In creating the managed care system, New Mexico attempted to implement a strategy to insulate the public coffers from variable expenditures associated with the medical assistance programs and shift the risk of loss. Section 27-2-16(B) was not enacted to regulate pharmaceutical reimbursements in general.

{42}  Requiring HSD and MCO contracts to comply with Section 27-2-16(B) would be

antithetical to the cost-saving and cost-efficiency purposes of a managed care system. We hold that Section 27-2-16(B) does not apply to managed care or Defendant MCOs and therefore reverse the Court of Appeals on that point. Plaintiffs have no cause of action against Defendant MCOs. We do not address the other issues presented on appeal.

**{43}** **IT IS SO ORDERED.**

_____
**PETRA JIMENEZ MAES, Justice**

**WE CONCUR:**

_____
**RICHARD C. BOSSON, Justice**

_____
**EDWARD L. CHÁVEZ, Justice**

_____
**CHARLES W. DANIELS, Justice**

**BARBARA J. VIGIL, Chief Justice, Dissenting**

**VIGIL, Chief Justice (dissenting).**

**{44}** I believe that pharmacists who dispense prescription drugs to Medicaid recipients must be paid under the formula set forth in NMSA 1978, Section 27-2-16(B) (1984), regardless of whether they are paid on a fee-for-service basis or by an MCO. Because the majority holds otherwise, I respectfully dissent. The majority holds that Section 27-2-16(B) does not apply to managed care for two reasons: first, because managed care was implemented after the passage of Section 27-2-16(B), and second, because payment of the dispensing fee to pharmacists conflicts with the underlying principles of controlling health care costs via the managed care system. I disagree, and I would hold that Section 27-2-16(B) must apply to MCOs for two reasons. First, because such a holding would be consistent with the plain language of the statute, and second because it is consistent with the principles of the Public Assistance Act.

**A.** **The Legislature Intended Section 27-2-16(B) to Apply to Managed Care**

**{45}** In order to determine whether Section 27-2-16(B) applies to the managed care system, we must determine what the Legislature intended when it used the words it chose in the statute. To do this, we apply traditional rules of statutory construction. "[I]t is part of the essence of judicial responsibility to search for and effectuate the legislative intent—the purpose or object—underlying the statute." *State ex rel. Helman v. Gallegos*,

1994-NMSC-023, ¶ 23, 117 N.M. 346, 871 P.2d 1352. "In interpreting a statute, the Court's primary goal is to ascertain and give effect to the intent of the legislature." *Diamond v. Diamond*, 2012-NMSC-022, ¶ 25, 283 P.3d 260 (internal quotation marks and citation omitted).

**{46}** To glean the Legislature's intent, we consider the plain language used in the statute. "[W]e look first to the plain language of the statute, giving the words their ordinary meaning, unless the Legislature indicates a different one was intended." *Id*. (internal quotation marks and citation omitted). "The first and most obvious guide to statutory interpretation is the wording of the statutes themselves." *Truong v. Allstate Ins. Co.*, 2010-NMSC-009, ¶ 37, 147 N.M. 583, 227 P.3d 73 (internal quotation marks and citation omitted). In fact, "the Legislature has mandated that [t]he text of a statute or rule is the primary, essential source of its meaning." *Id*. (alteration in original) (quoting NMSA 1978, § 12-2A-19 (1997)). "New Mexico courts have long honored this statutory command through application of the plain meaning rule, recognizing that [w]hen a statute contains language which is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation." *Truong*, 2010-NMSC-009, ¶ 37 (alteration in original) (internal quotation marks omitted).

**{47}** Section 27-2-16(B) reads: "If drug product selection is permitted by Section 26-3-3 NMSA 1978, reimbursement by the medicaid program shall be limited to the wholesale cost of the lesser expensive therapeutic equivalent drug generally available in New Mexico plus a reasonable dispensing fee of at least three dollars sixty-five cents ($3.65)." Section 27-2-16(B).

**{48}** The central question in this case is what the Legislature intended by its use of the words "medicaid program" in Section 27-2-16(B). Did it intend for the managed care system to be a part of the State's overall Medicaid program, as those words are used in Section 27-2-16(B)? In my view, it did for two reasons. First, the Legislature used the broad terms "medicaid program" in Section 27-2-16(B). Thus, it meant for the statute to apply to *both* the fee-for-service and managed care systems, which comprise the State's overall Medicaid program. Second, after managed care was implemented, the Legislature declined to amend this particular statute to limit its application only to the fee-for-service system, as it had done with other statutes. This should not be ignored in our quest to determine the Legislature's intent.

**{49}** The majority notes that "Section 27-2-16(B) does not explicitly provide that it is applicable to the managed care system, a system that did not exist when the statute was enacted." Maj. Op. ¶ 21. This interpretation misconstrues the managed care system as a system distinct and apart from the Medicaid program, which it is not. "'[M]edicaid' means the joint federal-state health coverage program pursuant to Title 19 or Title 21 of the federal act." NMSA 1978, Section 27-2-12.13(D)(7). "'[M]anaged care system' refers to the program for [M]edicaid recipients required by Section 27-2-12.6 NMSA 1978." Section 27-2-12.13(D)(6). The managed care system is part of the Medicaid program. *See* NMSA

15

1978, § 27-2-12.6(A) ("The department shall provide for a statewide, *managed care system* to provide cost-efficient, preventive, primary and acute care *for [M]edicaid recipients . . . .*" (emphasis added)). Because managed care is an integral part of the State's Medicaid program, where the Public Assistance Act refers broadly to the Medicaid program, such provisions, including Section 27-2-16(B), should apply to managed care.

**{50}** Likewise, the statute does not explicitly refer to either fee-for-service or managed care, but rather, it refers only to the Medicaid program—which as stated, encompasses both fee-for-service and managed care. The majority opinion ignores the use of the broad terms "the *medicaid* program" in its contemplation of the dispensing fee. The majority construes this language as ambiguous and by doing so interprets the statute beyond its plain meaning. Because the language used by the Legislature is clear, the majority errs in proceeding beyond its plain meaning. "We do not depart from the plain language of a statute unless we must resolve an ambiguity, correct a mistake or absurdity, or deal with a conflict between different statutory provisions." *Bd. of Veterinary Med. v. Riegger*, 2007-NMSC-044, ¶ 11, 142 N.M. 248, 164 P.3d 947. Finding no ambiguity in the statute, I believe the majority's interpretation beyond its plain meaning is erroneous.

**{51}** Further, considering that Section 27-2-16(B) was enacted in 1974[3], prior to the adoption of the managed care system in 1994[4], and the Legislature declined to amend the prior existing statute, it follows inferentially that the Legislature intended its words to remain in effect as written. *See Doe v. State ex rel. Governor's Organized Crime Prevention Comm'n*, 1992-NMSC-022, ¶ 12, 114 N.M. 78, 835 P.2d 76 ("We presume that the legislature knew about the existing law and did not intend to enact a law inconsistent with any existing law."). The words "medicaid program" remained in Section 27-2-16(B) when the managed care system was authorized and implemented. Nonetheless, the MCOs urge this Court to read the Legislature's refusal to amend the statute as ambiguous, and therefore make an exception for the MCOs which simply does not exist. As this Court has previously stated, we will not read language into a statute that does not exist. *See Sims v. Sims*, 1996-NMSC-078, ¶ 22, 122 N.M. 618, 930 P.2d 153 ("The courts will not add to such a statutory enactment, by judicial decision, words which were omitted by the legislature." (quoting *State ex rel. Miera v. Chavez*, 1962-NMSC-097, ¶ 7, 70 N.M. 289, 373 P.2d 533)).

**{52}** The Legislature's intent that Section 27-2-16(B) apply to MCOs is further demonstrated by the Legislature's choice to amend other parts of the Public Assistance Act in order to explicitly create exemptions for the managed care system. As Plaintiffs argue, and the Court of Appeals noted, *see Starko,* 2012-NMCA-053, ¶ 41, the Legislature could, and did, create exemptions for MCOs' obligations to other types of providers. It declined to create such an exemption to Section 27-2-16(B).

---

[3]1974 N.M. Laws, ch. 31, § 1.

[4]1994 N.M. Laws, ch. 62, § 22.

16

**{53}** For example, NMSA 1978, Section 27-2-12.3, which addresses Medicaid reimbursements for physicians, dentists, optometrists, podiatrists, and psychologists services, and contemplates Section 27-2-16, was first enacted in 1987[5], before the Legislature adopted the managed care system. In 1987, Section 27-2-12.3 read:

> The human services department shall establish a rate for the reimbursement of physicians, dentists, optometrists, podiatrists and psychologists for services rendered to medicaid patients that provides equal reimbursement for the same or similar services rendered without respect to the date on which such physician, dentist, optometrist, podiatrist or psychologist entered into practice in New Mexico, the date on which the physician, dentist, optometrist, podiatrist or psychologist entered into an agreement or contract to provide such services or the location in which such services are to be provided in the state.

Section 27-2-12.3 (1987). After the Legislature adopted managed care in 1994, it amended[6] Section 27-2-12.3 to read as follows:

> The human services department shall establish a rate for the reimbursement of physicians, dentists, optometrists, podiatrists and psychologists for services rendered to medicaid patients . . . provided, however, that *the requirements of this section shall not apply when the human services department contracts with entities pursuant to Section 27-2-12.6 NMSA 1978 to negotiate a rate for the reimbursement for services rendered to medicaid patients in the medicaid managed care system.*

Section 27-2-12.3 (emphasis added). This exemplifies precisely the manner in which the Legislature could have, but chose not to exempt MCOs from their obligation to pay pharmacists the dispensing fee prescribed by Section 27-2-16(B).

**{54}** Likewise, the statutory scheme includes a section that specifically limits its application to the fee-for-service system. NMSA 1978, Section 27-2-12.8 establishes standard reimbursement payments for mammograms. It was first enacted[7] in 1997, after the Legislature adopted the managed care system, and states:

> In providing coverage for mammograms under the medicaid program, the department shall ensure that . . . *any fee for service payment that shall be made on behalf of the medicaid program* for a mammogram of a medicaid

---

[5] 1987 N.M. Laws, ch. 269, § 1.

[6] 1996 N.M. Laws, ch. 70, § 1.

[7] 1997 N.M. Laws, ch. 264, § 1.

recipient shall be consistent with and not exceed the usual and customary charge that reflects the reasonable fair market value of the cost of a mammogram.

Section 27-2-12.8 (emphasis added). This also demonstrates the manner in which the Legislature could have limited the mandatory reimbursement to pharmacists of the dispensing fee to the fee-for-service system only, but chose not to. Although the Legislature had amended other sections of the Public Assistance Act in order to create the exemption sought in this case, it declined to do so. Instead it allowed the statute to continue to remain unchanged to apply to the Medicaid program as a whole.

**{55}** The Court of Appeals noted, "[t]he Legislature twice rejected amendments that specifically would have either lowered payments or required periodic renegotiation. *See* H.B. 400, 45th Leg., 2d Sess. (N.M. 2002) (not passed); S.B. 183, 46th Leg., 2d Sess. (N.M. 2004) (not passed)." *Starko*, 2012-NMCA-053, ¶ 30. The proposed amendment, which would have created separate reimbursement requirements for the fee-for-service and the managed care systems, would have replaced Subsection (B) of Section 27-2-16 with the following language:

> Reimbursement by the human services department to pharmaceutical providers participating in the medicaid fee-for-service program shall be determined by the human services department as provided by applicable state and federal law, including regulations adopted by the human services department. Reimbursement by organizations with a contract with the human services department to provide medicaid services to their respective pharmaceutical providers shall be determined by negotiation between such organizations and such providers, or their representatives.

S.B. 183, 46th Leg., 2d Sess. (N.M. 2004) (not passed). This proposed amendment to Section 27-1-16(B) illustrates not only that the Legislature considered permitting MCOs to determine pharmacists' reimbursement rates by contract and declined to do so, but also that if the Legislature wanted to create such an exemption, it was aware of exactly how to do so. Because the Legislature did not limit the application of Section 27-2-16(B) to only fee-for-service, but rather left "the medicaid program" language intact with no limitation or exemption, it intended the statute to remain applicable to MCOs. It twice considered making such an amendment and twice declined to do so. This Court has previously recognized the significance of failed legislation in determining legislative intent. *See Hartford Ins. Co. v. Cline*, 2006-NMSC-033, ¶ 10, 140 N.M. 16, 139 P.3d 176 (concluding that the legislature did not intend to recognize domestic partners as "family members" in the context of automobile insurance coverage).

**{56}** The majority dismisses the Legislature's refusal to amend Section 27-2-16(B) as ambiguous. *See* Maj. Op. ¶ 21. This is not ambiguous. By declining to amend the statute at least twice, our lawmakers revealed their intention quite clearly *not* to remove Section 27-2-

16(B) from the managed care system. The majority dismisses the Legislature's deliberate consideration and refusal to amend an indication that it really intended to amend the statute by implication. "[A]mendments by implication are not favored." *Johnston v. Bd. of Ed. of Portales Mun. Sch. Dist. No. 1, Roosevelt Cnty.*, 1958-NMSC-141, ¶ 36, 65 N.M. 147, 333 P.2d 1051.

**{57}** When the Legislature intended a particular provision to apply to either fee-for-service or managed care, but not both, it said so. *See, e.g.*, Section 27-2-12.8. When it did not mean for a particular provision to apply, it amended the statute to eliminate the implication of such broad and inclusive terms. *See, e.g.*, Section 27-2-12.3. Then, when it considered amending Section 27-2-16(B) to carve out the very exemption that the MCOs ask this Court to do here, it voted not to do so. By keeping the broad terms "medicaid program" in Section 27-2-16(B), the Legislature intended to require that pharmacists receive the dispensing fee, whether paid by HSD or MCOs, even in the advent of managed care. In sum, when the words "medicaid program" are read in conjunction with other provisions of the Public Assistance Act, the interpretation that Section 27-2-16(B) should apply to both fee-for-service and managed care becomes even more certain.

**B.      The Application of Section 27-2-16(B) Supports the Policy Behind the Managed Care System**

**{58}** I agree with the majority that the Legislature's intent in authorizing and adopting a managed care system was to reduce the growth in Medicaid costs. *See* Maj. Op. ¶ 23 ("[S]tates moved to the new model to get away from the fixed rate imposed by the fee-for-services model, in an attempt to scale back the costs to states associated with the Medicaid program."). However, this was not the only basis for the enactment of the new system and because this cost savings to the State is not thwarted by applying Section 27-2-16(B) to managed care, I disagree with the majority.

**{59}** The majority accepts the MCOs' contention that by imposing the statutory reimbursement rate on prescriptions, the "sought after savings due to managed care would not materialize." Maj. Op. ¶ 31. The majority reasons that "where lowering cost is a substantial concern, creating a new system but importing the old cost model is antithetical to the goals contemplated by the new system," and "this cannot have been the Legislature's intent." Maj. Op. ¶ 40. It concludes that "[i]n creating the managed care system, New Mexico attempted to implement a strategy to insulate the public coffers from variable expenditures associated with the medical assistance programs and shift the risk of loss." Maj. Op. ¶ 41.

**{60}** The majority discusses costs savings in general, but where it states that applying the statute to MCOs as being antithetical to the Legislature's intent, it conflates two concepts: cost savings to the State and cost savings to the MCOs. The former is the policy objective that supported the shift to a managed care system, and that goal was achieved when the shift took place. The managed care system, as the majority acknowledges, allows the State to have

19

cost certainty by paying the MCOs a single rate per Medicaid recipient. That goal is achieved by virtue of the very existence of the managed care system.

**{61}**     In order to effectuate the cost savings goal of managed care, HSD enters into capitated risk contracts with MCOs. *See* 8.305.11.9(A) NMAC (07/01/2001) (repealed and recodified at 8.308.20.9 NMAC) ("HSD shall make actuarially sound payments under capitated risk contracts to the designated MCO[]."). These contracts set a capitated per-person rate, which HSD pays to MCOs, and the rate includes payment for both the services to be provided to the recipient and the administrative costs of delivering the services. *See* 8.305.11.9(B) NMAC ("HSD shall pay a capitated amount to the MCO[] for the provision of the managed care benefit package at specified rates . . . . The MCO[] shall accept the capitation rate paid each month by HSD as payment in full for all services to be provided pursuant to the agreement, including all administrative costs associated therewith.") In turn, MCOs are responsible for delivering all services offered by the Medicaid program; they cannot pick and choose which services to offer. *See* 8.305.11.9(A) ("The MCO[] shall be responsible for the provision of services for members during the month of capitation."); and 8.305.11.9(B) NMAC ("The MCO[] does not have the option of deleting benefits from the medicaid defined benefit package."). Perhaps most important to the cost savings function of the managed care system is that MCOs bear the risk of loss should the cost of services exceed the capitated rate they receive for any particular recipient. *See* 8.305.11.9(E) NMAC ("The MCO[] is at risk of incurring losses if its costs of providing the managed care medicaid benefit package exceed its capitation payment. HSD shall not provide retroactive payment adjustments to the MCO[] to reflect the actual cost of services furnished by the MCO[].").

**{62}**     The MCOs' issue with the statute's dispensing fee mandate rests upon how it affects the cost borne by the MCOs, *not the State*. In other words, the concern is with the mandated dispensing fee's impact on the MCOs' profit margin—the difference between what they are paid by the State for managing Medicaid services and the cost associated with doing so. Where the majority reasons that imposing a fixed statutory cost on the MCOs under the statute is antithetical to the cost savings purpose of the managed care system, it incorrectly identifies by whom the risk of loss is borne. It is borne by the MCOs, not the State. The cost to the State is fixed by virtue of the managed care contracts between the State and the MCOs, and becomes certain at the time the contracts are entered into, not at the time the dispensing fee is paid to the pharmacists. The cost to the MCOs of paying the dispensing fee to pharmacists is the MCOs' cost of doing business managing Medicaid for the State. That cost is voluntarily assumed by the MCOs at the time they contract with the State. Once that contract is entered into, the risk of loss is shifted from the State to the MCO. Thus, the policy objective to contain Medicaid costs is achieved at the time the contracts between the State and the MCOs are entered into.

**{63}**     Additionally, in my view, applying the statutory reimbursement rates to the MCOs also advances the stated goals of the Public Assistance Act to ensure an adequate pool of providers across New Mexico. Reimbursement for dispensing generic medication must be

20

sufficient to ensure that services remain available to all persons in need of such assistance. If a provider's participation in the State Medicaid program is not economically feasible, then the pool of available providers will shrink. As an HSD official explained, reimbursement of pharmacy services by the Medicaid program is "done in a way so that the pharmacist, a small pharmacist . . . generally can participate in the program." By applying the dispensing fee set by Section 27-2-16(B) to MCOs, the Legislature evidences its intent to effectuate this purpose. As the Plaintiffs note, the statutory dispensing fee "is intended to compensate pharmacists serving New Mexico's Medicaid population at a minimally adequate rate to ensure their competence and professional independence, ensure an adequate network of pharmaceutical providers throughout New Mexico, encourage participation in the Medicaid program, and ensure the Medicaid recipients have a broad choice of providers." To hold that the dispensing fee does not apply to MCOs is in direct contradiction to these important policy purposes.

{64}    Finally, as the majority notes, the managed care system was established to address the increasing cost of Medicaid, placing higher burdens on taxpayers. *See* Maj. Op. ¶ 22. It is counterintuitive to imagine that the Legislature, in an effort to save the State money on Medicaid, would design a statutory scheme which allows the MCOs to forgo payment of the statutorily-prescribed fee—a risk that they voluntarily agreed to assume—while still requiring HSD to pay the same in the fee-for-services system. This scheme would save *only* the MCOs money—not the State. In my view, this is antithetical to the principle of saving the *State* money.

## C.    Conclusion

{65}    The Legislature's intent is unequivocal—Section 27-2-16(B) applies to both the fee-for-service and managed care systems, which together comprise the State's Medicaid program. The overall underlying policies supporting the provision of medical care for Medicaid recipients are supported by this interpretation. For these reasons, I respectfully dissent.

_____

**BARBARA J. VIGIL, Chief Justice**

21