The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: May 23, 2022

**No. A-1-CA-38923**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**JUANA AMADOR DELAO,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**Steven Blankinship, District Judge**

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
MJ Edge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

# OPINION

**WRAY, Judge.**

{1}     Defendant Juana Amador DeLaO appeals her convictions for four counts of fraud, contrary to NMSA 1978, Section 30-16-6(E) (2006), and thirteen counts of failing to disclose facts to obtain public assistance, contrary to NMSA 1978, Section 30-40-1(D), (E) (2006).[1] The charges related to Defendant's application for and receipt of several forms of public assistance benefits: Supplemental Security Income (SSI), Social Security Disability Insurance (SSDI), Medicaid, and food stamps (SNAP). Defendant invites us to reverse her convictions based on her contentions that the charges under Section 30-16-6 and Section 30-40-1 are either entirely preempted by federal law or they are duplicative. Alternatively, Defendant seeks remand for "a new and fair trial before a properly instructed jury." We conclude that under these circumstances, convictions pursuant to both Section 30-16-6 (fraud) and Section 30-40-1 (failure to disclose facts to obtain public assistance) impose multiple unsanctioned punishments. We therefore affirm in part, reverse in part, and remand for the district court to vacate Defendant's convictions under Section 30-40-1. Otherwise, we affirm.

---

[1]The State charged eighteen counts and dismissed one count before trial. The counts were renumbered in the jury instructions and the verdicts. In this opinion, we generally refer to the renumbered counts that the jury considered and decided.

**BACKGROUND**

{2}    At the outset, we provide general background for SSI, SSDI, Medicaid, and SNAP benefits. SSI "is a federal income maintenance program for the aged, blind, or disabled" and eligibility is based on "need and a showing that the applicant's earning capacity is impaired by either age, blindness or other disability." *Sheets v. Sheets*, 1987-NMCA-128, ¶ 15, 106 N.M. 451, 744 P.2d 924. To qualify, the applicant must show income "below the statutory maximum" and awarded benefits "are subject to periodic review." *Id.* SSDI, however, is "an earned insurance proceed" that is "directly related to the amount the insured has paid into the program." *In re Marriage of Taber*, 280 P.3d 234, 238 (Kan. Ct. App. 2012). A person who has "previously worked and contributed to the program by paying taxes on earned income" is entitled to benefits if she subsequently "suffer[s] from a physical or mental disability and [is] no longer able to work." *Id.* Medicaid is a "federal-state program providing medical services to the needy." *Starko, Inc. v. Gallegos*, 2006-NMCA-085, ¶ 2, 140 N.M. 136, 140 P.3d 1085. New Mexico has adopted a "managed care system to provide cost-efficient, preventive, primary and acute care for medicaid recipients." NMSA 1978, § 27-2-12.6(A) (1994). The state contracts with other entities, "which in turn provide health care to Medicaid recipients." *Starko*, 2006-NMCA-085, ¶ 3. Last, SNAP is "a federal-state program," 8.139.100.9(A) NMAC, that is "designed to promote the general welfare and to

safeguard the health and well-being of the nation's population by raising the levels of nutrition among low-income households." 8.139.100.11(A) NMAC. With this as background, we turn to the facts of the present case.

{3}     The evidence at trial established that in 2012, Defendant submitted an application for and received SSI and SSDI benefits. Defendant reported either only social security income or did not disclose a current employer. As a result of her SSI application, Defendant additionally was determined to be eligible for Medicaid and received Medicaid benefits. In late 2013, Defendant also applied for SNAP benefits but reported no income or employment on those applications. Defendant, however, had income and was working for Dollar Cab between 2009 and 2012, and again between 2013 and 2017.

{4}     Defendant received SSDI, SSI, and Medicaid benefits between 2012 and 2017, and SNAP benefits between 2013 and 2017. Defendant, as a recipient of benefits from each of these programs, was obligated to report any income or employment changes to administering agencies. Despite reapplications and notice of her ongoing reporting obligations, Defendant did not report her Dollar Cab income or employment during the period that she received benefits from each of the programs. In 2018, Defendant was charged with multiple counts of fraud and failure to disclose facts to obtain public assistance. The jury convicted Defendant on all counts. Defendant appeals.

## DISCUSSION

{5}      On appeal, Defendant argues that (1) the multiple convictions violate double jeopardy, and (2) the district court improperly refused to instruct the jury on mistake of fact.[2] We address each of these arguments in turn.

## I.      Double Jeopardy

{6}      Defendant contends that the jury's seventeen convictions violate constitutional double jeopardy protections. We review double jeopardy claims de novo. *State v. Bernal*, 2006-NMSC-050, ¶ 6, 140 N.M. 644, 146 P.3d 289. In the context of the present case, double jeopardy protections prevent citizens from being subject to multiple punishments. *See id.* ¶ 7. "Multiple punishment problems can arise from both 'double-description' claims, in which a single act results in multiple

---

[2]Defendant additionally argues that the entire state prosecution was preempted by federal law. Federal preemption is a principle arising from "the basic structure of our federal system," dual state and federal sovereignty, and the limits placed on the states by the Supremacy Clause of the United States Constitution. *State v. Herrera*, 2014-NMCA-003, ¶ 6, 315 P.3d 311 (internal quotation marks and citation omitted). Federal preemption can be express or implied, and two distinct forms of implied preemption involve two separate well-established analyses. *Id.* ¶¶ 7, 9. All this to say, preemption is complicated. Defendant, however, neither identified an applicable form of preemption nor applied any specific preemption analysis to the particular statutes at issue in this case. Defendant has extensively set forth the law of federal preemption, but has not sufficiently developed any argument that allows us to apply the law to the circumstances of this case without significant extrapolation. *See Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 ("To rule on an inadequately briefed issue, this Court would have to develop the arguments itself, effectively performing the parties' work for them . . . [and creating] a substantial risk of error." (citation omitted)). Accordingly, we decline to address Defendant's preemption argument.

charges under different criminal statutes, and 'unit-of-prosecution' claims, in which an individual is convicted of multiple violations of the same criminal statute." *Id.* Defendant raises both double description and unit of prosecution claims, but we begin with a brief overview of the charges.

{7}    The jury considered four counts of fraud and thirteen counts of public assistance fraud (PA fraud). The following charts summarize the evidence at trial in relation to the instructions for the charges:

| The Medicaid Counts | | |
|---|---|---|
| Count/ Charge | Date Range/Amount charged | Amount Obtained |
| 1: Fraud | 1/1/13–12/31/17    > $2,500 | $16,517.83 |
| 2: PA fraud | 7/1/12–6/30/13    > $2,500 | $2,527.22 |
| 3: PA fraud | 7/1/13–6/30/14    > $2,500 | $5,289.34 |
| 4: PA fraud | 7/1/14–6/30/15    > $2,500 | $2,801.34 |
| 5: PA fraud | 7/1/15–6/30/16    > $2,500 | $3,169.66 |
| 6: PA fraud | 7/1/16–6/30/17    > $2,500 | $2,770.27 |

| The SSI Counts | | |
|---|---|---|
| Count/Charge | Date Range/Amount charged | Amount Obtained |
| 7: Fraud | 6/1/12–6/30/17    > $2,500 | $13,355.92 |
| 8: PA fraud | 7/1/13–6/30/14    > $2,500 | $2,508.00 |
| 9: PA fraud | 7/1/14-6/30/15    > $2,500 | $3,180.00 |
| 10: PA fraud | 7/1/15–6/30/16    > $2,500 | $3,204.00 |
| 11: PA fraud | 7/1/16–6/30/17    > $2,500 | $2,942.00 |

| The SSDI Count | | |
|---|---|---|
| Count/Charge | Date Range/Amount Charged | Amount Obtained |
| 12: Fraud | 7/1/12–6/30/17    > $2,500 | $11,185.00 |

| The SNAP Counts | | |
|---|---|---|
| Count/Charge | Date Range/Amount Charged | Amount Obtained |
| 13: Fraud | 11/1/13–10/31/17    > $2,500 | $8,168.00 |
| 14: PA fraud | 11/1/13–10/31/14    > $2,500 | $1,878.00 |
| 15: PA fraud | 11/1/14–10/31/15    > $2,500 | $1,631.00 |
| 16: PA fraud | 11/1/15–10/31/16    > $2,500 | $2,328.00 |
| 17: PA fraud | 11/1/16–10/31/17    > $2,500 | $2,328.00 |

{8}     With this as background, we consider whether Defendant was subjected to multiple punishments in violation of her double jeopardy rights, first if the fraud and PA fraud convictions resulted from wrongful double description and second whether the seventeen separate counts—multiple convictions under the same statute—are unacceptable units of prosecution.

**A.     The Double Description Claim**

{9}     To analyze a double description claim, we first consider "whether the conduct underlying the offenses was unitary, i.e., whether the same conduct violates both statutes," and if the conduct is unitary, we proceed "to analyze whether the [L]egislature intended to create separately punishable offenses." *State v. Gutierrez*, 2011-NMSC-024, ¶ 51, 150 N.M. 232, 258 P.3d 1024 (internal quotation marks and citation omitted). "Only if the first part of the test is answered in the affirmative, and the second in the negative, will the double jeopardy clause prohibit multiple punishment in the same trial." *Swafford v. State*, 1991-NMSC-043, ¶ 25, 112 N.M. 3, 810 P.2d 1223. Defendant argues that the PA fraud convictions must be vacated, because the same conduct supported those convictions that supported the fraud convictions, and the Legislature "did not intend to punish both general fraud against the government and [PA] fraud for unitary conduct." The State responds that the jury was clearly instructed on seventeen counts for "separate and distinct conduct," because the fraud instruction related to misrepresentation of a fact to different

6

agencies during four-year periods and the PA fraud instruction required a failure to disclose a material fact to different agencies in single-year periods. We agree with Defendant and begin our analysis with whether the conduct in question was unitary.

**1.     Unitary Conduct**

{10}     To determine whether conduct is unitary, we look to whether a defendant's acts are sufficiently distinct and "separated by time or space, looking to the quality and nature of the acts, the objects and results involved, and the defendant's mens rea and goals during each act." *State v. Saiz*, 2008-NMSC-048, ¶ 30, 144 N.M. 663, 191 P.3d 521, *abrogated on other grounds by State v. Belanger*, 2009-NMSC-025, ¶ 36 n.1, 146 N.M. 357, 210 P.3d 783. We also consider "the elements of the charged offenses, the facts presented at trial, and the instructions given to the jury," *State v. Sena*, 2020-NMSC-011, ¶ 46, 470 P.3d 227, and attempt to discern "an identifiable point at which one of the charged crimes ha[s] been completed and the other not yet committed." *State v. DeGraff*, 2006-NMSC-011, ¶ 27, 139 N.M. 211, 131 P.3d 61. For the reasons that follow, we conclude that Defendant's conduct supporting the fraud charges and the PA fraud charges was unitary, because (1) the fraud was not complete before the PA fraud was committed and the time and space for each overlapped, (2) the quality and nature of the acts was the same, (3) the object and results of the acts were the same, and (4) the mens rea for the fraud and the PA fraud

7

were the same. *See Saiz*, 2008-NMSC-048, ¶ 30. We begin our explanation with the Medicaid Counts.[3]

{11} The fraud count associated with Medicaid, Count 1, related to acts between January 1, 2013 and December 31, 2017, which resulted in the wrongful receipt of more than $2,500 in Medicaid benefits. The five Medicaid PA fraud counts related to twelve-month periods within roughly the same time period, July 1, 2012 through December 31, 2017. The fraud count related to Medicaid is therefore not "separated by time" but instead overlaps the Medicaid PA fraud counts. *Id.* The quality and nature of the acts underlying Count 1, and Defendant's mens rea, are the same as those underlying the Medicaid PA fraud counts. In closing argument, the State explained that Count 1, for Medicaid fraud, resulted in a total of $16,517.83 benefits to which Defendant was not entitled and pointed to State's Exhibits J-1, J-2, and J-3, which represented the total overpaid Medicaid benefits. The Medicaid PA fraud counts represent the failure to disclose information in order to obtain the same benefits for individual twelve-month periods between 2012 (six months before the fraud date range) and June 30, 2017 (the same year the fraud charge was completed). The same Exhibits, J-1 through J-3, used to calculate the $16,517.83 for Count 1, also provided the year-by-year totals for the amounts of benefits obtained for Counts

---

[3]Because the SSDI fraud count, Count 12, has no corresponding PA fraud counts, we do not evaluate Count 12 for double description problems.

2 through 6, the five Medicaid PA fraud charges. The Medicaid Counts all achieved the same results—the same benefits. *See id.* No more than $16,517.83 in Medicaid benefits were overpaid in the time between January 1, 2013 and December 31, 2017. With the same time, intent, acts, and results, the Medicaid fraud and Medicaid PA fraud counts in the present case encompass unitary conduct. *See id.*

{12}     The SSI Counts were charged with slightly different time frames. The SSI fraud charge, Count 7, runs from June 1, 2012 through June 30, 2017. The first SSI PA fraud charge, Count 8, does not begin to run until July 1, 2013—almost a year after the SSI fraud count begins. As a result, during the SSI fraud charge time frame, Defendant received a little over $1,500 in SSI benefits that were not associated with any SSI PA fraud counts. That amount, however, does not meet the statutory minimum for third degree fraud as charged, because it is less than $2,500. *See* § 30-16-6(E). The overpayment of benefits associated with SSI fraud, Count 7, did not exceed $2,500 until the PA fraud charging period began, and the amounts of benefits and time periods attributable to both Counts 7 and 8 overlapped. Thus, despite the period of time in which the benefits did not overlap, Count 7 was ongoing at the time Count 8 began and, like the Medicaid fraud count, overlapped the PA fraud time periods. The conduct charged for the SSI Counts was therefore unitary, like the Medicaid Counts, because the time periods were the same, the quality and nature of the acts (submitting the applications) was the same, the objects and results (the

benefits obtained) were the same, and the mens rea was the same. *See Saiz*, 2008-NMSC-048, ¶ 30.

{13} The time periods and benefits for Count 13 (SNAP fraud) and Counts 14 through 17 (SNAP PA fraud) overlap completely, and again, the acts, benefits obtained, and mens rea are the same. The conduct for those counts is also unitary. The State argues that the conduct is not unitary because it presented evidence that Defendant submitted multiple renewal documents with misrepresentations or omissions related to income and employment. This evidence, however, does not distinguish the Medicaid, SSI, and SNAP fraud counts on the one hand from the corresponding PA fraud counts on the other. Each fraud count (1) covered essentially the same time period as the individual PA fraud counts, (2) involved the same acts as the PA fraud counts, (3) obtained the same benefits as the PA fraud counts, and (4) was performed with the same mens rea. *See id.* The conduct was unitary, we therefore consider whether the Legislature intended for multiple punishments under Section 30-16-6 and Section 30-40-1. *See Swafford*, 1991-NMSC-043, ¶ 25.

**2.      Legislative Intent**

{14} The Legislature has not expressly authorized multiple punishments for fraud and PA fraud, and so we apply the test outlined in *Blockburger v. United States*, 284 U.S. 299 (1932), in order to determine whether such Legislative intent can be inferred. *See Gutierrez*, 2011-NMSC-024, ¶ 55. In this analysis, we look to the

10

"distinct statutory provisions . . . to determine . . . whether each provision requires proof of a fact which the other does not." *Id.* ¶ 56 (internal quotation marks and citation omitted). When "the *Blockburger* test establishes that one statute is subsumed within the other, the inquiry is over and the statutes are the same for double jeopardy purposes—punishment cannot be had for both." *Id.* (internal quotation marks and citation omitted). If a statute is "multi-purposed and written with many alternatives, or is vague and unspecific," we apply the *Blockburger* test with "reference to the [s]tate's legal theory of the case." *Gutierrez*, 2011-NMSC-024, ¶ 59 (emphasis, internal quotation marks, and citation omitted). "The reason for this approach is that a statute that serves several purposes and has been written in the alternative may have many meanings and a wide range of deterrent possibilities." *Id.* ¶ 58 (internal quotation marks and citation omitted).

{15}     The fraud statute is a vague and unspecific statute. Section 30-16-6(A) defines "fraud" as "the intentional misappropriation or taking of anything of value that belongs to another by means of fraudulent conduct, practices or representations." Our Supreme Court has explained that ambiguous phrases like "anything of value" render a statute "vague and unspecific." *Gutierrez*, 2011-NMSC-024, ¶ 59. As a result, we must "ascertain the operation and deterrent purposes of such statutes for double jeopardy purposes by determining the elements—the legal theory—that constitute the criminal causes of action in the case at hand." *Id.* (internal quotation

11

marks and citation omitted). Having already laid out the statutory requirements for fraud, we consider the requirements for PA fraud.

{16} Section 30-40-1(A) defines PA fraud as follows:

> [K]nowingly failing to disclose a material fact known to be necessary to determine eligibility for public assistance or knowingly failing to disclose a change in circumstances for the purpose of obtaining or continuing to receive public assistance to which the person is not entitled or in amounts greater than that to which the person is entitled.

The classifications of the crime are defined by the value of the public assistance wrongfully received. *See* § 30-40-1(B)-(F) (ranging from petty misdemeanor to second degree felony based on the value of public assistance received). Similarly, fraud is classified by the value of the property misappropriated, *see* § 30-16-6(B)-(G), and further requires that the victim rely on the misrepresentation. *See* UJI 14-1640 NMRA. We consider the requirements of both crimes more closely as they relate to each other.

{17} To commit PA fraud, an individual must first knowingly either (1) fail to disclose a material fact necessary to determine eligibility, or (2) fail to disclose a change in circumstances. *See* § 30-40-1(A). Either of those PA fraud elements satisfies the general fraud requirement that the individual act by "means of fraudulent conduct, practices or representations." Section 30-16-6(A). Next, for PA fraud, the facts must be withheld "for the purpose of obtaining or continuing to receive public assistance to which the person is not entitled or in amounts greater

than that to which the person is entitled." Section 30-40-1(A). This PA fraud element satisfies two additional general fraud requirements. First, the nondisclosure must be for the purpose of obtaining benefits to which the person is not entitled, *see* § 30-40-1(A), indicating that the benefits would not be dispersed if the disclosure had been made. Put another way, the government agency must have relied on the nondisclosure to disperse the benefits. *See* UJI 14-1640 (requiring reliance for fraud). Second, because the facts were not disclosed in order to obtain benefits to which the person was not entitled, the withholding of the facts is an "intentional misappropriation or taking of anything of value that belongs to another." Section 30-16-6(A).

{18} Both statutes further require, in the context of the State's theory in the present case, that Defendant "obtained" the same benefits. By their language, the statutes appear to have different requirements: fraud requires only that the defendant obtain generally "anything of value," § 30-16-6(A), while PA fraud requires that the defendant "obtain public assistance." Section 30-40-1(A). Because, however, fraud is a "vague and unspecific" statute, in order to determine whether these are the same or different requirements, we must return to the State's theory of the case. *Gutierrez*, 2011-NMSC-024, ¶ 59. The four fraud convictions (Counts 1, 7, 12, and 13) required proof of the taking of public assistance benefits—the same public assistance that formed the basis for the PA fraud charges. Thus, the PA fraud convictions are

13

subsumed within the fraud convictions, and "punishment cannot be had for both." *Id.* ¶ 56 (internal quotation marks and citation omitted). The PA fraud convictions must therefore be vacated.

**B.      Unit of Prosecution**

{19}      Defendant additionally argues that the four fraud convictions[4] also violate double jeopardy based on multiple units of prosecution. For a unit of prosecution claim, we first "review the statutory language for guidance on the unit of prosecution," and if the statutory language does not spell out the unit of prosecution, "then we move to the second step, in which we determine whether a defendant's acts are separated by sufficient 'indicia of distinctness' to justify multiple punishments under the same statute." *Bernal*, 2006-NMSC-050, ¶ 14. As to the first step, the fraud statute "does not clearly define its unit of prosecution." *State v. Boergadine*, 2005-NMCA-028, ¶ 20, 137 N.M. 92, 107 P.3d 532. We therefore turn to Defendant's argument that "the conduct underlying the fraud convictions lack these indicia of distinctness."

{20}      To evaluate "distinctness," the parties do not dispute that we apply the factors set forth in *Herron v. State*, 1991-NMSC-012, ¶ 15, 111 N.M. 357, 805 P.2d 624, including "(1) temporal proximity of the acts; (2) location of the victim(s) during

---

[4]Because we have determined the thirteen PA fraud convictions must be vacated, we do not consider whether those convictions are improper units of prosecution that violate double jeopardy.

14

each act; (3) existence of an intervening event; (4) sequencing of acts; (5) [the] defendant's intent as evidenced by his [or her] conduct and utterances; and (6) the number of victims." *Boergadine*, 2005-NMCA-028, ¶ 21 (internal quotation marks and citation omitted). We may additionally consider whether a defendant's acts "were performed independently of the other acts in an entirely different manner, or whether such acts were of a different nature." *Id.* (internal quotation marks and citation omitted). In the context of a particular case, some factors are not useful in application. *Id.* ¶ 23. For example, the second and fourth factors are particularly relevant to sexual assault cases, but are not tailored to every offense. *Id.* Defendant contends that she withheld the same information from the same victim—which she defines as "the United States"—and that these actions happened "at the same times for each of the programs, with the same intent, conduct and utterances." We evaluate the *Herron* factors and conclude that they support the four separate charges under these circumstances. We begin by addressing Counts 7, 12, and 13.

{21} Counts 7, 12, and 13, related to SSI, SSDI, and SNAP benefits, are separated from each other in time, the first *Herron* factor. The SSI and SSDI applications relevant to the charging period were submitted on the same day, May 7, 2012, but the applications were submitted at different times of day. The SSDI application indicates submission at just after 9:00 a.m. and the SSI application was submitted at nearly 2:00 p.m., hours later. The trial exhibits further demonstrate that the SNAP

15

applications were submitted on entirely different dates than the SSI and SSDI applications: September 29, 2013, November 26, 2013, November 25, 2014, September 17, 2015, and October 28, 2016. More than a year separated the first SNAP applications from the SSI and SSDI applications. *See Boergadine*, 2005-NMCA-028, ¶ 22 ("The greater the interval between acts the greater the likelihood of separate offenses." (alteration, internal quotation marks, and citation omitted)). The time intervals between the different applications are all different, but the separations in time nevertheless demonstrate distinct acts by Defendant.

{22} These three counts—for SSI, SSDI, and SNAP—are also distinguished by Defendant's intent, manner of committing the fraud, and the number of victims. *See id.* ¶ 21 (outlining these unit of prosecution considerations). All three applications were for different benefits, indicating Defendant's separate intents to obtain different benefits. *See id.* ¶ 25 (noting that separate requests for money for different purposes, accompanied by "various assurances and justifications" supported separate intents to defraud). Defendant committed the frauds in a different manner, because the three benefits programs involved different qualifying criteria and imposed separate requirements on Defendant. *See id.* ¶ 21 ("We may also consider whether [the d]efendant's acts were performed independently of the other acts in an entirely different manner." (internal quotation marks and citation omitted)). For example, the Social Security Administration communicated with Defendant separately about SSI

16

and SSDI benefits, which caused Defendant to engage in different renewal processes for the two benefits programs. SNAP involved yet a different renewal process. The manner of committing each fraud was therefore different against three separate programs, and three separate programs gave Defendant benefits as a result of her applications and her failures to report income and employment. *See id.* ¶ 27 ("[M]ultiple victims will likely give rise to multiple offenses." (internal quotation marks and citation omitted)). The conduct for Counts 7, 12, and 13 was distinct and supported separate fraud charges.

**{23}** We separately consider whether Counts 1 and 7 were sufficiently distinct, because at trial, a special agent with the Office of the Inspector General for the Social Security Administration testified that a successful application for SSI automatically qualifies a person to receive Medicaid benefits. This raises the question of whether Defendant's actions in obtaining Medicaid (Count 1) were sufficiently distinct from her actions in obtaining SSI benefits (Count 7).

**{24}** We turn again to those *Herron* factors that are relevant to determine the distinctness of the fraud charges. Defendant's act of applying for Medicaid was simultaneous with the act of applying for SSI benefits. The conduct is therefore not temporally distinct. *See Boergadine*, 2005-NMCA-028, ¶ 21. Defendant, however, received different Medicaid and SSI benefits, which shows a different manner of committing an independent fraud. *See id.* We explain. The Medicaid billing records

17

indicate that Defendant received coverage for many individual medical needs—prescriptions, doctor visits—for many years after the Social Security Administration forwarded the approved SSI application to the state for Medicaid approval. Those medical benefits received and accepted by Defendant when she sought medical care, show "acts of a different nature" than receiving SSI needs-based monthly financial assistance in the form of a payment. *Id.* (internal quotation marks and citation omitted).

{25} Defendant further demonstrated distinct intent—another *Herron* consideration—by her conduct because it is reasonable to infer that Defendant knew she received Medicaid coverage, her extensive medical expenses were covered for a period of five years, and in July 2012 Defendant was explicitly informed that her Medicaid eligibility was dependent on her income levels, SSI eligibility, and ability to pay. Defendant received and accepted (1) health coverage and (2) monthly SSI payments, with knowledge that she was working, had not reported the employment or income, and eligibility for each of the benefits was income-dependent. Defendant's acts and intent were directed at separate benefits programs, indicating separate victims. *See id.* ¶ 27. The SSI benefits stemmed from a federal program, and Defendant's Medicaid benefits came from both federal and state agencies. Although Defendant obtained separate benefits from a single application, the remaining factors demonstrate that Defendant's acts related to the ongoing receipt

18

of Medicaid and SSI benefits were sufficiently distinct in intent, manner of receipt, and variety of victims. As a result, the multiple convictions for fraud related to Medicaid and SSI benefits do not violate double jeopardy.

## II. Jury Instructions

{26} Last, Defendant argues that the district court improperly refused to give the jury a mistake of fact instruction. "The propriety of jury instructions is a mixed question of law and fact," which we review de novo. *State v. Romero*, 2005-NMCA-060, ¶ 8, 137 N.M. 456, 112 P.3d 1113. Defendant preserved the request for the instruction, and so we consider whether the refusal to give the instruction was reversible error. *State v. Anderson*, 2021-NMCA-031, ¶ 14, 493 P.3d 434. The failure to instruct is reversible error if the "evidence at trial supports the giving of an instruction on a defendant's theory of the case." *State v. Contreras*, 2007-NMCA-119, ¶ 8, 142 N.M. 518, 167 P.3d 966 (internal quotation marks and citation omitted). "When considering a defendant's requested instructions, we view the evidence in the light most favorable to the giving of the requested instruction." *Romero*, 2005-NMCA-060, ¶ 8.

{27} A mistake of fact instruction permits the jury to find that the defendant believed particular facts and requires the state to prove that "the defendant did not have an honest and reasonable belief in the existence of those facts at the time of the alleged conduct." UJI 14-5120 NMRA. The district court need not "offer duplicate

instructions if the instructions given adequately apprise the jury of the controlling law." *State v. Bunce*, 1993-NMSC-057, ¶ 8, 116 N.M. 284, 861 P.2d 965. Specifically, the district court "need not give a mistake of fact instruction where the intent element of the crime is adequately defined by the other instructions given." *Id.* ¶ 9. The question before us is whether fraud[5] instructions adequately define the requisite intent. *See id.* ¶ 10.

{28}   We conclude they do. The fraud instructions, which were modeled on the uniform jury instruction and are not challenged on appeal, required the jury to find that Defendant intended to deceive or cheat the Social Security Administration and HSD. *See State v. Hornbeck*, 2008-NMCA-039, ¶ 34, 143 N.M. 562, 178 P.3d 847 (noting the conviction for fraud required the jury to find the defendant misrepresented a fact "with intent to deceive or cheat" (citing UJI 14-1640)). Defendant's mistake of fact theory was that she mistakenly believed that by separately reporting her income to HSD to satisfy a child support obligation, she satisfied all of her reporting obligations. The jury heard evidence that Defendant believed she had appropriately reported. If the jury believed that Defendant mistakenly did not report specifically to HSD or the Social Security Administration, the jury could not have convicted Defendant for fraud because the requisite intent to

---

[5]Because we have concluded the PA fraud convictions must be vacated, we do not address whether the PA fraud instructions adequately defined the requisite intent.

20

"deceive or cheat" would have been absent. Thus, the fraud instruction adequately apprised the jury of the intent element of the crime and allowed it to consider Defendant's theory, and the district court did not err by refusing to give Defendant's requested instruction.

**CONCLUSION**

{29}    For the reasons stated herein, we affirm in part, reverse in part, and remand for the district court to vacate Defendant's convictions for violation of Section 30-40-1.

{30}    **IT IS SO ORDERED.**

_____
**KATHERINE A. WRAY, Judge**

**WE CONCUR:**

_____
**JACQUELINE R. MEDINA, Judge**

_____
**ZACHARY A. IVES, Judge**